UNITED STATES v. CONRAD et al.

(Circuit Court, D. West Virginia. January 11, 1894.)

1. INDICTMENT—AVERMENT OF TIME.
    A charge of an offense as committed "on the ——— day" of a month and year named is not defective where any day of that month was prior to the finding of the indictment and within the period of limitation applicable, and where time is not of the essence of the offense.

2. SAME—DESCRIPTION OF OFFENSE.
    An indictment for depositing in a post office a circular concerning a lottery, (Rev. St. § 3894,) setting forth with particularity the circular and its publication, and alleging that it was concerning a lottery, and to promote and aid the same, is not defective for insufficient description of such lottery.

3. CONSTITUTIONAL LAW—PLACE OF TRIAL FOR CRIME—MAILING LOTTERY CIRCULAR.
    Violations of Rev. St. § 3894, by depositing or causing to be deposited in the mails circulars concerning a lottery, or by sending such matter or causing it to be sent by mail, are complete without transmission or delivery of such matter, and an indictment therefor can be tried only in the district in which the matter is mailed; and so much of that section, as amended by Act Sept. 19, 1890, as provides for the trial and punishment of those offenses in another district, to which such matter is carried by mail for delivery, is void, as conflicting with section 2, art. 3, and with the sixth amendment to the constitution of the United States.

But the offense of causing the prohibited matter to be delivered by mail, not being complete until such delivery, may be tried and punished in the district in which delivery is so made. Horner v. U. S., 12 Sup. Ct. 522, 143 U. S. 570, explained.

At Law. Indictment against Paul Conrad and others for violation of Rev. St. § 3894, as amended by the act of September 19, 1890. Heard on demurrer to indictment. Demurrer sustained.

George C. Sturgiss, U. S. Atty.

J. D. Rouse and J. B. Jackson, for defendants.

GOFF, Circuit Judge. The defendants are charged with violating the provisions of section 3894 of the Revised Statutes of the United States, as amended by the act of congress approved September 19, 1890, (26 Stat. 465, c. 908,) called the "Anti-Lottery Act," which reads as follows:

"No letter, postal card or circular concerning any lottery, so-called gift concert or other similar enterprise offering prizes dependent upon lot or chance, or concerning schemes devised for the purpose of obtaining money or property under false pretenses, and no list of the drawings at any lottery or similar scheme, and no lottery ticket or part thereof, and no check, draft, bill, money, postal note or money order for the purchase of any ticket, tickets, or part thereof, or of any share or any chance in any such lottery or gift enterprise, shall be carried in the mail or delivered at or through any post office or branch thereof, or by any letter carrier; nor shall any newspaper, circular, pamphlet or publication of any kind containing any advertisement of any lottery or gift enterprise of any kind offering prizes dependent upon lot or chance, or containing any list of prizes awarded at the drawings of any such lottery or gift enterprise, whether said list is of any part or of all of the drawing, be carried in the mail or delivered by any postmaster or letter carrier. Any person who shall knowingly deposit or cause to be deposited, or who shall knowingly send or cause to be sent, anything to be conveyed or delivered by mail in violation of this section, or who shall knowingly cause to be delivered by mail anything herein forbidden to be carried by mail, shall be deemed guilty of a misdemeanor, and on conviction shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than one year, or by both such fine and imprisonment for each offense. Any person violating any of the provisions of this section may be proceeded against by information or indictment and tried and punished, either in the district at which the unlawful publication was mailed or to which it is carried by mail for delivery according to the direction thereon, or at which it is caused to be delivered by mail to the person to whom it is addressed."

The indictment contains six counts, in which the offenses charged are set forth in different ways. The first count charges:

That the defendants, on the —— day of July, A. D. 1891, at the city of New Orleans, in the state of Louisiana, did unlawfully and knowingly deposit and place in the post office of the United States at the city of New Orleans, in the state of Louisiana, with intent that the same should be sent by the postmaster at the city of New Orleans and conveyed by the mail of the United States to the city of Charleston, in the district of West Virginia, a certain circular concerning a lottery, which circular * * * was intended by said defendants to promote and aid the carrying on the business of said lottery, * * * and which was directed to "Lewis Loewenstein, Charleston, W. Va.," in a wrapper duly stamped, and which was carried and conveyed by mail to the post office of the United States at Charleston, in the district of West Virginia, for delivery according to the directions thereon, and was intended by said defendants to be so carried and conveyed by

said mail to Charleston, in the district of West Virginia, for delivery, defendants well knowing said circular to be one concerning a lottery, contrary, etc.

### The second count charges:

That defendants, on the ——— day of July, in the year of our Lord one thousand eight hundred and ninety-one, at the city of New Orleans, in the state of Louisiana, did unlawfully and knowingly cause to be deposited and placed in the mail of the United States, at the post office of the United States at the city of New Orleans, in the state of Louisiana, with intent that the same should be sent and conveyed by mail to the city of Charleston, in the district of West Virginia, a certain circular concerning a lottery, * * * intended to aid in the business of said lottery, * * * which circular was inclosed in an envelope, duly stamped, and directed to Lewis Loewenstein, Charleston, W. Va., and which was carried and conveyed by the mail of the United States, to the post office at Charleston, in the district of West Virginia, for delivery according to the said directions thereon, * * * contrary, etc.

### The third count charges:

That defendants, on the ——— day of.July, A. D. 1891, at the city of New Orleans, in the state of Louisiana, did unlawfully and knowingly send, to be conveyed and delivered by the mail of the United States, by depositing in the post office of the United States, at the city of New Orleans, in the state of Louisiana, a certain circular concerning a lottery, and with which circular, in the same inclosure and wrapper, when so deposited, was inclosed a certain envelope and cover, intended to be used to convey by express money to pay for tickets and chance in the drawings of said lottery, and which circular and envelope were intended by defendants to promote and aid in the setting up and carrying on of the business of said lottery, * * * and were inclosed together in a wrapper, and stamped with the United States postage, ' * * * and directed and addressed as follows: "Lewis Loewenstein, Charleston, W. Va.," and which were carried and conveyed by the mail of the United States to the post office of the United States at Charleston, in the district of West Virginia, for delivery according to the said direction thereon, and were intended by said defendants to be so carried and conveyed by mail to Charleston, in the district of West Virginia, for delivery to said * * *, contrary, etc.

### The fourth count sets forth:

That the defendants, on the ——— day of July, A. D. 1891, at the city of New Orleans, in the state of Louisiana, did unlawfully and knowingly cause to be sent, to be conveyed and delivered by the mail of the United States, by depositing in the post office of the United States at New Orleans, in the state of Louisiana, a certain circular concerning a lottery, * * * intended and designed by defendants to promote and aid in the setting up and carrying on the business of said lottery, * * * and which was inclosed in a wrapper duly stamped, * * * and directed and addressed as follows: "Lewis Loewenstein, Charleston, W. Va.;" and which was carried and conveyed by the mail of the United States to the post office at Charleston, in the district of West Virginia, for delivery according to said directions thereon, with intent * * *, contrary, etc.

### The fifth count alleges:

That defendants, on the ——— day of July, in the year of our Lord one thousand eight hundred and ninety-one, did unlawfully and knowingly deposit and place in the mail of the United States, at the post office of the United States at the city of New Orleans, a certain circular, pamphlet, and publication concerning a lottery, * * * which circular, pamphlet, and publication contained and constituted an advertisement of and for a certain lottery, sometimes called the Louisiana State Lottery Company, and sometimes called the Louisiana Lottery Company, and which were intended

and designed to promote and aid in the conducting and carrying on the business of said lottery, * * * and which were then and there inclosed in a wrapper, and directed and addressed as follows, that is to say. "Lewis Loewenstein, Charleston, W. Va.," and stamped * * *, and were, after they were so deposited, carried by said mail to the post office at Charleston in the district of West Virginia, and were intended to be so carried for delivery to said Lewis Loewenstein, to advertise and aid said lottery, * * * contrary, etc.

### It is charged in the sixth count:

That defendants, on the ——— day of July, in the year of our Lord one thousand eight hundred and ninety-one, did unlawfully and knowingly place and cause to be placed in the mail of the United States at New Orleans a certain circular, pamphlet, and publication concerning a lottery, * * * sometimes called the Louisiana State Lottery Company, * * * which were intended to promote and aid the business of said lottery, * * * and which were inclosed in a wrapper, duly stamped, and directed to Lewis Loewenstein, Charleston, W. Va., and which were, after the same was so placed and deposited, carried by said mail to the post office at Charleston, in the district of West Virginia, and were intended to be so carried by said mail for delivery to said Lewis Loewenstein, ⸱ * * contrary, etc.

In each count the circular, pamphlet, and publication referred to is set out in full, but the description of the same and the recitals I have given are sufficient, I think, for all purposes connected with the questions now to be disposed of. The defendants demur to the indictment and to each count thereof. It is insisted that the indictment is defective, because that no day certain is alleged in any of the counts on which the offenses charged were committed; that the allegations that "defendants did, on the ——— day of July, in the year of our Lord one thousand eight hundred and ninety-one," etc., are equivalent to no dates being given. In this case I do not think so, as time is not of the essence of the offense charged. Any day in July, A. D. 1891, was prior to the finding of the indictment, and within the period of the statute of limitations applicable to the section said to have been violated. The old rule of the common law on this point, as announced in the cases cited in argument, has been greatly modified by the decisions of our courts, as well as by special statutes for that purpose. The averment of time is a formal one, and it is not required that the offense shall be proven to have been committed at the time charged in the indictment, except in cases where time itself is an indispensable ingredient in the offense. The fact that a particular day in the month of July, A. D. 1891, is not alleged is not to the prejudice of the defendants.

It is also claimed that the indictment is bad because the lottery that defendants are charged with aiding and promoting is not described with sufficient detail and clearness. It is argued that the description is so general that defendants are unable to prepare their defense, and that they would not be able, in case of conviction, to plead the judgment of this court as a bar to a subsequent prosecution for the same offense. In this indictment the crime charged consists in unlawfully depositing and placing in a post office a circular concerning a lottery, and this circular is in each count set forth in haec verba. The particularity required by the authorities relied on by counsel for defendants applies in this instance to the

character of the circular mailed, to the post office where mailed, to the person to whom it was sent, and the office to which it was directed. With even greater minuteness than was necessary have the circular and publication been set forth, and in two of the counts has the lottery alluded to been designated by name, while in all of them it is particularly alleged that the circular described was concerning a lottery, and was to promote and aid the same. In my opinion the defendants are sufficiently well advised by the indictment of the nature and cause of the accusation made against them, and are able to make their defense with all reasonable certainty and knowledge. 2 Story, Const. § 1785; U. S. v. Cruikshank, 92 U. S. 542; U. S. v. Simmonds, 96 U. S. 360.

In support of the demurrer it is claimed that this court has no jurisdiction of the offense alleged in the indictment for the reason that it appears from the allegations thereof that the crimes charged, if committed, were begun and completed in the eastern district of Louisiana, and that defendants have the constitutional right to be tried for the same in that district. The district attorney claims that the United States can prosecute the defendants either in the eastern district of Louisiana, where the unlawful publication was mailed, or in the district of West Virginia, to which it was carried by mail for delivery according to the direction thereon. It will be necessary to ascertain what offenses have been created by the section of the Revised Statutes on which this indictment is founded, before we can dispose of this question. In the case of U. S. v. Horner, 44 Fed. 677, Judge Brown of the district court for the southern district of New York, in speaking of said section, said:

"Three somewhat different offenses are created by the section above quoted: (1) Knowingly depositing or causing to be deposited such forbidden matter in the mails; (2) sending such matter or causing it to be sent by mail; (3) knowingly causing such matter to be delivered by mail."

This construction has received the approval of the supreme court of the United States in Horner v. U. S., 143 U. S. 207, 12 Sup. Ct. 407. The first, second, fifth, and sixth counts of the indictment now under consideration charge the offense as depositing or causing to be deposited, and placing and causing to be placed the forbidden matter mentioned, in the mails, under the first classification alluded to. The third and fourth counts charge the sending of such matter and the causing it to be sent by mail, under the second of said distribution of offenses. It thus appears that there is no count under the third group,—that of knowingly causing such matter to be delivered by mail. It is not claimed, nor is it alleged in any of the counts, that any of the prohibited matter or circulars deposited and placed, and caused to be deposited and sent by the defendants, at and from the post office at New Orleans was ever delivered to the person to whom it was addressed in the district of West Virginia. The offenses coming under the first and second groups, as I have mentioned them, do not require for their completion that the forbidden matter deposited in the mails, intended for transmission therein to the person to whom directed should be in fact transmitted or delivered. In order to con-

vi\_t the party accused of those offenses it is only necessary to prove that he knowingly deposited or caused to be deposited in the mails, or knowingly sent or caused to be sent, anything to be conveyed oi delivered by mail in violation of said section; and thus it seems that the offenses charged in this indictment were committed, if at all, in the eastern district of Louisiana. It is not alleged in any count that the prohibited matter was deposited or caused to be deposited by defendants in the district of West Virginia, or that any of it was delivered to the person to whom it was addressed in said district. If it were so charged, then, in my opinion, the indictment would be good, and the defendants could be tried thereon in this district.

The district attorney insists that defendants can be prosecuted in this district, as well as in the eastern district of Louisiana, under the last paragraph of section 3894, Rev. St. U. S., as amended, which provides that any person so violating said section may be proceeded against either in the district at which the unlawful publication was mailed or to which it is carried by mail for delivery according to the direction thereon, or at which it is caused to be delivered by mail to the person to whom it is addressed. I do not find it to be an offense, separate from that existing because of the depositing of the prohibited matter, to cause such matter to be carried by mail for delivery according to the direction thereon; and consequently there can be no punishment inflicted for causing it to be so carried, if it is not delivered, other than as provided for the depositing. Can the defendants be prosecuted in the district of West Virginia for offenses within the first and second classifications before mentioned, for which they can, beyond question, be proceeded against in the eastern district of Louisiana, not only because of the provisions of section 3894, but because the offenses were committed there? If the charge was that the defendants knowingly caused the circular and publication described to be delivered by mail to the party to whom it was directed, in West Virginia, could they be prosecuted for such delivery in Louisiana? In such case, would not the allegations of the indictment as to the depositing and causing to be sent be considered as descriptive of the thing delivered, as showing that it was in the mail, from which it was delivered, and would not the offense consist in the delivery in the district of West Virginia?

I do not think that the supreme court of the United States held in the case of Horner v. U. S., 143 U. S. 207, 12 Sup. Ct. 407, as the district attorney claims that it did. In that case the indictment was found by a grand jury of the district court of the United States for the southern district of Illinois, and a bench warrant issued founded thereon for the arrest of Horner. The district judge for the southern district of New York issued a warrant to the marshal of that district to remove Horner to the southern district of Illinois, to be tried in said district upon such counts of the indictment pending in said district as the said Horner could be legally tried upon. The judge, in his opinion, (44 Fed. 677,) based his action on the ground that the fifth count of the indictment charged an offense which was only completed upon the delivery of the matter sent by mail to the person to whom it was directed; that such offense con-

sisted in knowingly causing the prohibited matter to be delivered by mail; and that, although under the fifth count the act began in New York by deposit in the mail, the offense of causing the delivery by mail could not be consummated except by delivery to the person and at the place intended. In other words, he held that Horner could be removed from the southern district of New York to the southern district of Illinois for trial on an indictment found in said last-named district, charging the delivery of the prohibited matter in that district to the person to whom it was directed. He treated the allegations of the indictment relative to the mailing of the circular in New York as statements showing how it came to be in the mail. The first, second, third, and fourth counts of that indictment charged the offense as being that the defendant did unlawfully and knowingly deposit and cause to be deposited a circular relating to a lottery, in the post office at New York, in the state of New York, addressed to a certain person in Illinois, which said circular was then and there carried by mail for delivery to said party in said state of Illinois, according to the direction thereon. These counts of that indictment, it will be noticed, describe the offense proper substantially as it is described in the counts of the indictment I now consider. The judge did not rule as to said four counts, not finding it necessary, as under the fifth count, which he held to be good, he was compelled to issue his warrant for removal. I think the intimation is quite broad that but for the fifth count he would have declined to issue the warrant. The supreme court affirmed the ruling of the district judge, holding that "the distinct and separate crime charged in the fifth count of the indictment was committed in the southern district of Illinois, and is triable there." The said fifth count charged the delivery of the prohibited mail matter to the party to whom it was directed in the southern district of Illinois.

Nor do I understand the case of In re Palliser, 136 U. S. 257, 10 Sup. Ct. 1034, as does the district attorney. The United States marshal for the southern district of New York, by virtue of a warrant issued by a United States commissioner of that district, held in his custody one Charles Palliser, who obtained from the circuit court of the United States for that district a writ of habeas corpus. From the return to the writ it appears that Palliser had been arrested in the southern district of New York, and after a hearing by the commissioner, under section 1014 of the Revised Statutes, had been committed for trial in the district of Connecticut, where the offense was alleged to have been committed. The crime charged was that he unlawfully and willfully did tender to a postmaster in Connecticut a certain contract, with intent to induce him to do certain acts in violation of his duty as such postmaster. The tender was made in a letter mailed by Palliser at New York, directed to and received by the postmaster in Connecticut. It was claimed on the hearing of the habeas corpus that the district court of the United States for the district of Connecticut, in which the indictment had been returned and was then pending, had no jurisdiction over the case, as the offense was completed when the letter was mailed in New York, and that the accused had a right to be tried in the southern district

of New York, where the offense was committed. The writ of habeas corpus was dismissed, and an appeal was taken to the supreme court of the United States. That court affirmed the order of dismissal. It will be noted that the offense charged against Palliser was not the unlawful mailing of prohibited matter, but was, in effect, that of attempting to bribe a postmaster in the discharge of his official duty, and the supreme court said:

"It might admit of doubt whether any offense against the laws of the United States was committed until the offer or tender was known to the postmaster, and might have influenced his mind. But there can be no doubt at all that, if any offense was committed in New York, the offense continued to be committed when the letter reached the postmaster in Connecticut; and that, if no offense was committed in New York, an offense was committed in Connecticut; and that in either aspect the district court of the United States for the district of Connecticut had jurisdiction of the charge against the petitioner. Whether he might have been indicted in New York is a question not presented by this appeal."

As I understand this opinion of the supreme court in the Palliser Case, it sustains the conclusion I have reached,—that the offenses charged against the defendants in the present case cannot be tried in the district of West Virginia, but must be prosecuted in the eastern district of Louisiana, where it appears from the allegations set forth in the indictment that they were committed. If we compare the facts as shown in the cases I have cited with the facts as they are alleged to exist in the indictment now under consideration, the differences which distinguish them will be plain.

Holding, as I do, that the offenses charged against these defendants were commenced and completed in the eastern district of Lounsiana, if at all, it follows that section 731 of the Revised Statutes has no application to this case, for it is only applicable "when any offense against the United States is begun in one judicial district and completed in another."

I come now to consider that clause of section 3894, as amended, which provides that:

"Any person violating any of the provisions of this section may be proceeded against by information or indictment and tried and punished, either in the district at which the unlawful publication was mailed or to which it is carried by mail for delivery according to the direction thereon, or at which it is caused to be delivered by mail to the person to whom it is addressed."

It will be observed that this clause does not create any new or additional offenses, but that it simply provides the mode of procedure, and the place of trial and punishment, for any person violating any of the provisions of said section. The offenses created by it, I have already described. The clause I have just quoted must be construed in connection with a clause of section 2 of article 3 of the constitution of the United States, which reads as follows:

"The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where the said crime shall have been committed."

Also must it be considered in connection with the sixth amendment to the constitution of the United States, reading as follows:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

This amendment, as well as the original clause which it supplements and enlarges, in view of the rights designed to be protected, is to be liberally construed. Giving full effect to these constitutional provisions, as I must do, and regarding all legislation that conflicts therewith as null and void, as it is my duty to do, I must decline to enforce that clause of said section 3894, as amended, that permits a person accused of crime to be prosecuted and tried for the offense of which he is charged, in a court held in a state and district other than the state and district in which the crime was committed.

The congress has by said section created certain offenses in connection with the mailing and delivery through the mail of certain prohibited matter, as it constitutionally could do; and such offenses are in some cases commenced and completed in the same district. In such cases the party accused is entitled to a trial in the district where the offense was so commenced and completed; or, in other words, where the crime was committed. I therefore hold that so much of the last clause of said section as provides that a person violating the provisions of such section may be proceeded against, tried, and punished in a district to which such matter is carried by mail for delivery—the offense having been, before such matter is so carried, committed in another district—is not law, is unconstitutional and void. That part of said clause authorizing the prosecution in the district at which the mail matter is caused to be delivered by mail to the person to whom it is addressed is operative, because it is made an offense to so cause such delivery; an offense that is not completed until the unlawful publication is delivered to the person to whom it is addressed, even though such delivery is made in a district other than the one in which the publication was mailed. The constitution provides for such cases when it permits the trial to be had at the district where the crime shall have been committed.

The district attorney insists that the questions involved in the demurrer to the indictment I now consider have been ruled upon by the supreme court of the United States, and against the contention of the defendants, referring to Horner v. U. S., 143 U. S. 570, 12 Sup. Ct. 522. It is true that the supreme court in that case said: "The question of the constitutionality of section 3894, as amended, is disposed of by the decision of this court in Re Rapier, which holds that it is constitutional," (143 U. S. 110, 12 Sup. Ct. 374;) but I do not understand that the supreme court has passed on the clause of said section involved in this case. So far as said section was applicable to the cases so decided by the supreme court, it was held by that court to be constitutional. A glance at the Horner Case will be instructive at this point. A United States commissioner issued

his warrant for the arrest of Horner on complaint on oath made by a post-office inspector, charging that Horner on the 29th of December, 1890, had unlawfully deposited and caused to be deposited in the post office at New York City, in the state of New York, and in the southern district of New York, a certain circular to be conveyed and delivered by mail, which, in the contents thereof, as set forth in the complaint, concerned a lottery, and which was then and there addressed to Joseph Ehrman, 70 Dearborn street, Chicago, Ill., and was inclosed in an envelope, with the postage thereon prepaid, and carried by mail. The commissioner, after examination, committed Horner to the custody of the marshal in default of bail, to await the action of the grand jury. Afterwards Horner presented his petition to the circuit court of the United States for the southern district of New York, and that court ordered that the writ of habeas corpus issue. The writ issued, and was served, return duly made, counsel were heard, and the court dismissed the writ, remanding Horner to the custody of the marshal. An appeal was then taken to the supreme court of the United States. Questions not germane to the present case, relative to the jurisdiction of the supreme court and to the character of the circular described in the warrant, were on the hearing of the appeal considered and decided. The supreme court affirmed the order of the circuit court dismissing the writ of habeas corpus, saying that "the offense, if any, was committed within the southern district of New York," and that "the question of the constitutionality of section 3894, as amended, is disposed of by the decision of this court in Re Rapier, 143 U. S. 110, 12 Sup. Ct. 374, which holds that it is constitutional." It thus appears that Horner was proceeded against in the district where the circular was mailed, and in which the court held that the offense, if any, was committed. There is now no question as to the constitutionality of the provisions of said section relating to such a case. We turn now to In re Rapier, 143 U. S. 110, 12 Sup. Ct. 374, referred to by the supreme court in the Horner Case. It was an application for discharge by writ of habeas corpus from arrest for alleged violations of said section 3894, as amended, and the question for determination related to the constitutionality of said legislation. The writ was denied, the court holding that the said statute was a constitutional exercise of the power conferred upon congress by article 1, § 8, of the constitution, to establish post offices and post roads, and does not abridge "the freedom of speech or of the press," within the meaning of amendment 1 to the constitution; that the power vested in congress to establish post offices and post roads embraces the regulation of the entire postal system of the country, and that under it congress may designate what may be carried in the mail and what excluded; that in excluding various articles from the mails the object of congress is, not to interfere with the freedom of the press, or with any other rights of the people, but to refuse the facilities for the distribution of matter deemed injurious by congress to the public morals; that the transportation in any other way of matter excluded from the mails is not forbidden. The question raised in this case, and elaborately and ably discussed by

counsel, and decided by the supreme court, was as to the constitutionality of the legislation generally known as the "Anti-Lottery Act," as to whether or not it was in conflict with the provisions of amendment 1 to the constitution of the United States.    The following extract from the opinion of the court, which was delivered by the chief justice, indicates, far better than I can describe the questions involved and disposed of, the trend and scope of the decision:

"We cannot regard the right to operate a lottery as a fundamental right infringed by the legislation in question; nor are we able to see that congress can be held in its enactment to have abridged the freedom of the press. The circulation of newspapers is not prohibited, but the government declines itself to become an agent in the circulation of printed matter which it regards as injurious to the people.    The freedom of communication is not abridged, within the intent and meaning of the constitutional provision, unless congress is absolutely destitute of any discretion as to what shall or shall not be carried in the mails, and compelled arbitrarily to assist in the dissemination of matters condemned by its judgment through the governmental agencies which it controls.    That power may be abused furnishes no ground for a denial of its existence, if government is to be maintained at all."

The question raised by the demurrer which I now sustain was not presented in any of the cases cited, and has not, as I understand it, been decided by the supreme court.    The indictment is quashed, and the defendants are discharged.