### MacDANIEL v. UNITED STATES.[1]

(Circuit Court of Appeals, Fourth Circuit. May 3, 1898.)

No. 232.

1. UNLAWFUL USE OF MAILS—INDICTMENT—LOTTERY.

An indictment which, in plain language, charges the defendant with using the mails to carry on the lottery business, causing letters concerning the lottery business to be addressed to him under a false, fictitious, and assumed name, and receiving such letters from the post office, is sufficient.

2. SAME—CONSTRUCTION OF STATUTES.

Act March 2, 1889, c. 393, § 2, making it a criminal offense to use the United States mails in carrying on or promoting any unlawful business

---

[1] As to sufficiency of indictment for mailing lottery matter, see note to Timmons v. U. S., 30 C. C. A. 74.

under a false, fictitious, or assumed name, and Rev. St. § 3894, as amended by Act Sept. 19, 1890, forbidding the use of the mails in carrying on or promoting the lottery business, construed in pari materia, plainly show the intent of congress to make the use of the mails to carry on or promote the lottery business under an assumed name a criminal offense.

Goff, Circuit Judge, dissenting.

## Appeal from the District Court of the United States for the District of Maryland.

The grand jury for the district of Maryland returned as "a true bill" an indictment against the plaintiff in error, charging "that Jesse L. MacDaniel, late of said district, yeoman, heretofore, to wit, on the thirteenth of December, in the year of our Lord one thousand eight hundred and ninety-six, at Baltimore, in the district aforesaid, was then and there engaged in conducting, promoting, and carrying on, by means of the post-office establishment of the United States, a certain unlawful business; that is to say, the said Jesse L. MacDaniel, acting then and there under the false, fictitious, and assumed name of George W. Baird & Company, was then and there engaged in conducting, promoting, and carrying on the business of general agent for the Royal Havana Lottery of Havana, Cuba, which said business was then and there conducted, promoted, and carried on by the said Jesse L. MacDaniel, acting, as aforesaid, under the false, fictitious, and assumed name of George W. Baird & Company, by means of the post-office establishment of the United States; and that said business, so then and there conducted, promoted, and carried on, by the said Jesse L. MacDaniel, under said false, fictitious, and assumed name, was then and there, by virtue of the act of congress approved September 19, 1890, an unlawful business, within the meaning of section 2, c. 393, act of congress approved March 2, 1889."

The second paragraph sets out the unlawful business more specifically, and a letter mailed at Summit, N. J., to George W. Baird & Co., New York, thence remailed to the same address, at Baltimore, and by the said Jesse L. MacDaniel received from the post-office establishment in Baltimore. The letter was of and concerning the lottery business. The third paragraph is the conclusion that plaintiff was carrying on an unlawful business, within the meaning of the statute quoted, by means of the post-office establishment and the use of a false, fictitious, and assumed name. The second count in the bill of indictment charges the same offense on a different day, and sets out another letter of like import.

Plaintiff in error demurred to the bill of indictment "because the matters therein contained are not sufficient in law, and he is not bound to answer the same." There was no objection to the form of the demurrer. It was overruled, and plaintiff in error required to answer as provided by statute. Rev. St. § 1026. On the trial subsequently had there was a conviction and sentence. To the action of the court in overruling the demurrer plaintiff in error excepted, and this was the exception relied on in the argument.

The demurrer was general, but in the exceptions found in the record and the argument it is insisted that the business set out in the bill must be per se an unlawful business, and the prosecution cannot rely on the words, "or any other unlawful business whatsoever," to bring the conduct of the plaintiff in error within the purview of the statute.

Charles F. Harley, for appellant.

Wm. L. Marbury, U. S. Atty.

Before GOFF, Circuit Judge, and BRAWLEY and PURNELL, District Judges.

PURNELL, District Judge (after stating case as above). There is and has been for many years a tendency to liberality in pleading, both civil and criminal. Many of the states have adopted the code system, supposed to be the simplest known to the profession, bidden

farewell to John Doe and Richard Roe, myths familiar to the older members of the profession, and many technicalities of pleading. Other states adhere to the old forms, and the courts continue to draw distinctions with refined nicety. The citation of state authorities in the argument, therefore, tends more to confuse than to elucidate, and can have no weight, especially when the tendency to substantial justice without too much form has invaded the halls of congress, and a rule has been prescribed for the federal courts. Rev. St. § 1025, provides:

"No indictment found and presented by a grand jury in any district or circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

There are other provisions applying to specified offenses, such as perjury, showing the same tendency to liberality in criminal pleadings in the courts of the United States. The section quoted has been often invoked, and almost universally construed to mean mere matters of form should not avail a criminal if the bill charges the offense in such a way as to fully inform him of the violation of law with which he is charged, and protect him, in the event of acquittal or conviction, against a second trial for the same offense. U. S. v. Jackson, 2 Fed. 502; U. S. v. Molloy, 31 Fed. 19.

For the purpose of the demurrer, the facts alleged in the bill are admitted. The first paragraph of the bill alleges that the plaintiff in error was engaged in carrying on an unlawful business by means of the post-office establishment of the United States and the use of a false and fictitious name, and then proceeds to describe the business, —a lottery. The second paragraph, in even more specific terms, sets out that, being engaged in carrying on an unlawful business by means of the post-office establishment of the United States and the use of a false and fictitious name, he received from the post office a letter addressed to the false and fictitious name, and sets out the letter; and the third paragraph is the conclusion that he was violating the statute. Language could hardly state the charge plainer. Congress has not made carrying on a lottery business unlawful per se, and could not do so; but congress has made carrying on, promoting, and conducting a lottery business, by means of the post-office establishment, not only unlawful, but criminal. Rev. St. § 3894; Act Sept. 19, 1890. The act is constitutional, and the power to regulate what shall or shall not be carried in the mails is vested in congress. In re Rapier, 143 U. S. 110, 12 Sup. Ct. 374; Horner v. U. S., 143 U. S. 207, 12 Sup. Ct. 407. "Unlawful" does not necessarily mean contrary to law. "Un" is a preposition used indiscriminately, and may mean simply "not," and "unlawful" may mean simply "not authorized by law." Congress has not only not authorized matter concerning a lottery business to be sent through the mails, but has prohibited and excluded it from the mails. So, it is not only unlawful, but criminal, to conduct, promote, or carry on the lottery business by using the United States mails for this purpose; it is the modus, not the business per se. The statute (Rev. St. § 3894), as amended,

creates the offenses of carrying on the lottery business by depositing or causing to be deposited in the mails, sending or causing to be sent or delivered, such matter by the use of the post-office establishment. U. S. v. Conrad, 59 Fed. 458, and cases cited. All matter concerning lotteries has been excluded from the United States mails. And the taking of such matter from the mails or post office is forbidden, especially when addressed to one under a false, fictitious, and assumed name. The acts of plaintiff, if the facts alleged be true, show that he knew this, and, if he did not, ignorance would not be a valid defense. The words in the statute, "or any other unlawful business whatsoever," include a scheme or device made unlawful, prohibited by act of congress. The indictment charges plaintiff in error with using the United States mails to carry on the lottery business, causing letters concerning the lottery business to be addressed to him under a false, fictitious, and assumed name, and receiving such letters so addressed from the post office. This was an unlawful business, within the meaning of the statute. The words refer to what has been made unlawful by act of congress. Plaintiff in error was well advised by the indictment of the nature and cause of the accusation against him, and was able to make his defense with all reasonable certainty and knowledge. This was sufficient. U. S. v. Conrad, 59 Fed. 458; 2 Story, Const. 1785; U. S. v. Cruikshank, 92 U. S. 542; U. S. v. Simmons, 96 U. S. 360. The indictment, if defective at all, is only defective in form, and does not tend to prejudice plaintiff in error. This brings it within the provisions of section 1025, Rev. St.

The rule that penal statutes must be strictly construed is still in force, but has been much relaxed and given a more liberal application than in days when there were a great many more offenses punishable with death. The rule is laid down by the chief justice, delivering the opinion for the court, in U. S. v. Lacher, 134 U. S. 628, 10 Sup. Ct. 625, the case upon which U. S. v. Brewer. 139 U. S. 278, 11 Sup. Ct. 538, cited and relied on by plaintiff in error, is based. The chief justice says: "But though penal laws are to be construed strictly, yet the intention of the legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the legislature." Many authorities are cited for this rule. The same rule now contended for by plaintiff in error was contended for in that case. In construing a statute, all existing statutes should be taken into consideration in pari materia, whether referred to or not, and by this rule the true intent of the legislature or lawmaking department of the government is arrived at, for it is that department which makes the law. "It appears to me," said Mr. Justice Story, in U. S. v. Winn, 3 Sumn. 209, 211, Fed. Cas. No. 16,740, "that the proper course, in all of these cases, is to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature." To the same effect is the statement of Mr. Sedgwick, in his work on Statutory and Constitutional Law (2d Ed., p. 282):

"The rule that statutes of this class are to be construed strictly is far from being a rigid or unbending one; or, rather, it has in modern times been so modified and explained away as to mean little more than penal provisions, like all others, are to be fairly construed according to the legislative intent, as expressed in the enactment,—the courts refusing, on the one hand, to extend the punishment to cases which are not clearly embraced in them; and, on the other hand, equally refusing, by any mere verbal nicety, forced construction or equitable interpretation to exonerate parties plainly within their scope."

And the reason for the less rigorous application of the rule is well given in Maxwell on the Interpretation of Statutes.

Applying the rule to the case under consideration, what was the legislative intention in the act of 1889? The first section of that act was not intended (as a casual reading will show) to make dealing in counterfeit goods, or the devices therein mentioned, penal offenses, —there was legislation sufficient on that subject,—but to make the use of the mails for the purpose of promoting or carrying on the devices enumerated unlawful and criminal. The gravamen of the offense was the use of the mails. Then section 2 provides:

"That any person who, in and for conducting, promoting or carrying on, in any manner by means of the post-office establishment of the United States, any scheme or device mentioned in the preceding section, or any other unlawful business whatsoever, shall use, assume or request to be addressed by any fictitious, false or assumed title, name or address, or name other than his own proper name, or shall take or receive from any post office of the United States any letter, postal card, or packet addressed to any such fictitious, false or assumed title, name or address, or name other than his own lawful and proper name, shall, upon conviction, be punishable as provided in the first section of this act."

Section 3894, Rev. St., amended by the act of September 19, 1890, provided that no letter, etc., concerning a lottery, shall be carried in the mail. In short, the legislative intention seems to have been to punish by fine and imprisonment the use of the mails for just such acts as plaintiff in error is charged with. The crimes are in pari materia, and the use of the mails for the promotion of a lottery scheme, and in an assumed name, as charged in the bill of indictment, is clearly within the meaning of the words, "or any other unlawful business whatsoever."

The exceptions to the refusal of the trial judge to give the special instructions asked for were not pressed in the argument. The charge was fair, full, and in accord with the law. A trial judge is not required to give special instructions in the exact language of counsel, often formulated with the purpose to mislead, or calculated, if not intended, to confuse, but to state the law in a way to be understood by the jury, and by them applied to the testimony, so as to intelligently find the facts. This seems, from the charge set out in the record, to have been done in an eminently proper and full manner.

The exceptions are overruled, the appeal dismissed, and the judgment of the district court affirmed. Affirmed.

BRAWLEY, District Judge. I concur in the result.

GOFF, Circuit Judge (dissenting). I am unable to concur in either the reasoning or the judgment of the court in this case. In my opin-

ion, the court below erred in not sustaining the demurrer to the indictment, which does not, in my judgment, charge the plaintiff in error with the commission of any crime,—with the doing of anything made unlawful by the statutes of the United States.