UNITED STATES v. EDDY.

(Circuit Court, D. Montana.   January 9, 1905.)

No. 526.

1. PERJURY—INDICTMENT—WILLFULNESS—STATUTES.

It is essential to the sufficiency of an indictment for perjury under Timber and Stone Act, § 2 (Act June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545]), providing that if any person, taking the oath prescribed, shall swear falsely in the premises, he shall be subject to all the penalties of perjury, etc., that it should allege that the act of false swearing was "willfully" done.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Perjury, § 67.]

2. SAME.

An indictment for perjury, consisting of an alleged false statement sworn to by defendant for the purpose of purchasing lands as required by Timber and Stone Act, § 2 (Act June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545]), set out an exact copy of the statement, including the oath, and after directly alleging that the application was made to purchase the land for speculation, and not for defendant's exclusive use and benefit, as testified by him, and directly alleging the existence of a contract to transfer the title, and that defendant's sole purpose was to procure the title for the benefit of another, charged that defendant on the date specified, etc., in and by said statement in writing, verified upon his oath, before the receiver of the land office, "willfully, corruptly, feloniously, and contrary to the same oath of him," the said defendant, etc., subscribed material matters contained in the statement, which he did not then believe to be true, and which he knew were not true, in a case where a law of the United States authorized an oath to be administered, etc.  *Held*, that such allegation of "willfulness" should be construed as a part of the charge in the indictment, and not merely as a conclusion of the pleader, within Rev. St. § 1025 [U. S. Comp. St. 1901, p. 720], providing that no indictment, etc., shall be found insufficient by reason of a defect in matter of form only, the indictment further concluding with an allegation that defendant did willfully commit perjury, against the peace and dignity of the United States, etc.

3. SAME—AUTHORITY OF OFFICER.

Under Timber and Stone Act, § 2 (Act June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545]), requiring entry statements to be verified by oath of the applicant before the register or receiver of the land office within the district where the land is situated, and section 2246, Rev. St. [U. S. Comp. St. 1901, p. 1371], authorizing such receiver or register to administer any oath required by law in connection with the entry or purchase of any tract of public lands, the courts will take judicial notice of the qualification of the receiver of the land office to administer an oath, and hence an averment of the fact is not essential to the validity of an indictment for perjury committed by false swearing in an entry statement verified before him.

Fred A. Maynard, Special Asst. U. S. Atty.
Marshall & Stiff and T. J. Walsh, for defendant.

HUNT, District Judge.   The records of the court show that the defendant was indicted for swearing falsely by indictment presented and filed in the District Court June 26, 1901.   Thereafter, on motion of the United States, the case was transferred to this court.   The crime charged is a violation of the timber and stone acts of the United States. The material parts of the indictment are as follows:

"That one Herbert Eddy, late of the district of Montana, on the 19th day of August, A. D. 1899, at and within the county of Missoula, state and district of Montana, did then and there appear in his own proper person before William Q. Ranft, who was then and there the receiver of the United States land office, within the district where the land hereinafter described is situated, and the said Herbert Eddy then and there so being before the said William Q. Ranft, receiver, as aforesaid, was in due manner sworn by the said receiver, who was then and there authorized by the laws of the United States to administer said oath, and said Herbert Eddy did thereby verify, by his said oath, the matters contained in a certain statement in writing, which statement, so verified by the said Herbert Eddy, he did then and there file with said receiver, and was and is of the tenor and effect following, to wit:

" 'Land Office at Missoula, Montana.

" '(Date) August 19, 1899.

" 'I, Herbert Eddy, of (town or city) Victor, County of Ravalli, State of Montana, desiring to avail myself of the provisions of the act of Congress of June 3, 1878, entitled "An act for the sale of timber lands in the states of California, Oregon, Nevada, and Washington Territory," as extended to all the Public Land States by act of August 4, 1892, for the purchase of the E. 2/ E. 4/, & E. 2/ SE. 4/ of Section 28, Township 15 N. of Range 16 W., in the district of lands subject to sale at Missoula, Montana, do solemnly swear that I am a native citizen of the United States of the age of 37 years, and by occupation Farmer, that I have personally examined said land, and from my personal knowledge state that said land is unfit for cultivation, and valuable chiefly for its timber; that it is uninhabited; that it contains no mining or other improvements, nor as I verily believe, any valuable deposit of gold, silver, cinnabar, copper or coal; that I have made no other application under said acts; that I do not apply to purchase the land above described on speculation, but in good faith to appropriate it to my own exclusive use and benefit; and that I have not, directly or indirectly, made any agreement or contract, or in any way or manner, with any person or persons whomsoever, by which the title I may acquire from the Government of the United States may inure, in whole or in part, to the benefit of any person except myself, and that my post-office address is Herbert Eddy, Victor, Ravalli County, Montana.                                                      Herbert Eddy.

" 'I hereby certify that the foregoing affidavit was read to affiant in my presence before he signed his name thereto; that said affiant is to me personally known (or has been satisfactorily identified before me by ——————, and that I verily believe him to be the person he represents himself to be; and that this affidavit was subscribed and sworn to before me this 19th day of August, 1899.                                          Wm. Q. Ranft, Receiver.'

"Whereas in truth and in fact the said Herbert Eddy did make application to purchase the land named and described in said statement for speculation, and with no purpose of appropriating said land to his own exclusive use and benefit; and whereas in truth and in fact the said Herbert Eddy had before the filing of said statement as aforesaid made and entered into a certain agreement and contract by which the title he was to acquire from the government of the United States in and to the lands named and described in said written statement was to inure, in whole, to the person with whom he had made such contract and agreement; and the sole purpose of the said Herbert Eddy in making and filing said written statement with said receiver, and in making oath to the same, was to obtain title to the lands named and described therein in order to benefit the person for whom by said contract and agreement he was acting; and so the grand jurors aforesaid, upon their oaths aforesaid, do say that the said Herbert Eddy, on the said 19th day of August in the year of our Lord 1899 within the county and district aforesaid, in and by his said statement in writing, verified upon his oath aforesaid, before the said receiver, willfully, corruptly, feloniously, and contrary to the same oath of him, the said Herbert Eddy, did state and subscribe material matters in said statement contained which he did not then believe to be true, and which he knew were not true, in a case where a law of the said United States authorized an oath

to be administered, and did commit willful, corrupt, and felonious perjury, against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided."

Defendant filed pleas in abatement, upon which testimony was heard, and thereafter the court, by Judge Beatty, then presiding judge in this judicial district, overruled the pleas. Defendant then filed a general demurrer, and argued the same orally before me in October, 1904. Counsel for the government waived oral reply, and obtained leave to make written argument, which was filed on November 21st last.

The principal question presented for decision is whether or not the indictment sufficiently charges that the oath made by the defendant before the receiver of the United States land office at Missoula, Mont., was willfully falsely taken. Section 2 of the timber and stone act referred to (Act June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545]) provides—

"That any person desiring to avail himself of the provisions of this act shall file with the register of the proper district a written statement in duplicate, one of which is to be transmitted to the General Land Office, designating by legal subdivisions the particular tract of land he desires to purchase, setting forth that the same is unfit for cultivation, and valuable chiefly for its timber and stone; that it is uninhabited, contains no mining or other improvements, except for ditch or canal purposes, where any such do exist, save such as were made by or belong to the applicant, nor, as deponent verily believes, any valuable deposit of gold, silver, cinnabar, copper, or coal; that deponent has made no other application under this act; that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit, and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself, which statement must be verified by the oath of the applicant before the register or receiver of the land office within the district where the land is situated; and if any person taking such oath shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury, and shall forfeit the money which he may have paid for said lands, and all right and title to the same."

In the statement of the question for determination I have assumed that it is necessary, in a charge of swearing falsely under the particular statute of the United States known as the timber and stone act, to allege that the act of swearing falsely was willfully done. This assumption has its foundation in a reluctance to depart from those general rules of criminal pleading which require technical accuracy in charging perjury, and rests upon the opinion that willfulness is part of the substance of the crime of swearing falsely, and therefore that it is necessary that defendant be told in exact language of the offense with which he is charged.

It may be that an indictment which charges false swearing under the act of Congress referred to can be properly sustained without allegations other than that the defendant falsely took the oath prescribed to be taken by an applicant who makes the statement required to be made before a register or receiver of the land office, upon the ground that it is sufficient for the pleader to use the exact words, and those only of the particular statute violated, even though the element of willfulness is involved in the substantive crime charged. The steady tendency

of the courts of the United States undoubtedly is to disregard forms, even though they be mistaken in expressing the substance of crimes in indictments, if the meaning can be understood, and if the bill charges the offense in such a way as clearly to inform the person of the violation of the law with which he is charged, and protect him, in the event of acquittal or conviction, against a second trial for the same offense. U. S. v. Jackson (C. C.) 2 Fed. 502; Wright v. U. S., 108 Fed. 810, 48 C. C. A. 37.

But in the crime of perjury the element of willfulness is so vitally essential, as of the substance, that in every case a careful pleader should be cautious to have it appear by appropriate legal words that the oath taken was willfully falsely taken. I shall hold, therefore, that it is not too strict a construction of the law pertinent to this cause to require that, where a charge is brought against one for its violation by swearing falsely, it is necessary to allege that the person, charged to have taken the oath required, willfully swore falsely in the premises.

Now, when we come to apply these rules carefully to the indictment under examination, is it sufficient to compel the defendant to answer thereto? It charges that "one Herbert Eddy * * * did then and there appear in his own proper person before William Q. Ranft, who was then and there the receiver of the United States land office, * * * and the said Herbert Eddy then and there * * * was in due manner sworn by the said receiver, who was then and there authorized by the laws of the United States to administer said oath, and said Herbert Eddy did there verify, by his said oath, the matters contained in a certain statement in writing * * * of the tenor and effect following, to wit: * * *." The application of the defendant Eddy is then set forth. Reference to it shows that in the statement made by Eddy the locality of the land office appears. So, too, does the date upon which the sworn statement was made, the name of the applicant, etc. Included also in the statement as pleaded in the indictment are these words:

"I do solemnly swear that I do not apply to purchase the land above described on speculation, but in good faith to appropriate it to my own exclusive use and benefit; that I have not, directly or indirectly, made any agreement or contract, or in any way or manner, with any person or persons whomsoever, by which the title I may acquire from the Government of the United States may inure, in whole or in part, to the benefit of any person except myself."

Then follows the certificate of the receiver of the land office to the effect that the affidavit was read to the affiant before he subscribed the same. The indictment then continues:

"Whereas in truth and in fact the said Herbert Eddy did make application to purchase the land named and described in such statement for speculation, and with no purpose of appropriating said land to his own exclusive use and benefit; and whereas in truth and in fact the said Herbert Eddy had before the filing of such statement aforesaid made and entered into a certain agreement and contract by which the title he was to acquire from the Government of the United States in and to the lands named * * * in such statement was to inure, in whole, to the person with whom he had made such contract and agreement; and the sole purpose of the said Herbert Eddy in making and filing said written statement with said receiver, and in making oath to the same, was to obtain title to the lands made and described therein in order to benefit the person for whom by said contract and agreement he was acting."

Here is a specific charge against Eddy of doing those specific acts which he had sworn he would not do and was not doing and had no purpose of doing. There is force in the argument that the charge against the defendant that when he made his application to purchase the land named and described in his sworn statement he had, before the filing of the same, made and entered into a contract by which his title would inure to the benefit of another, and that his sole purpose in making his statement was to obtain title in order to benefit another person, is one of acts done in a manner which reasonably imply that the taking of the oath was a willful false swearing, and that as the elements of willfulness are averred by stating the acts themselves the omission of the technical word becomes immaterial, and ought not to vitiate the indictment.

But continuing to hold that the rule of liberality of construction ought not to be invoked to supply the use of the word "willfully" or plainly equivalent words in false swearing, I pass the further discussion of this point, and proceed to inquire whether there is an allegation in this indictment which does directly and technically charge willful, corrupt, and false swearing.

After setting forth by exact copy the statement made by the applicant Eddy, including the oath to the several matters contained therein, and after direct allegations which state the truth and fact to be that the application was made to purchase the land described for speculation and with no purpose of appropriation for his own exclusive use and benefit, and after direct allegations of a pre-existing contract for the transfer of title, and after direct averment that the sole purpose of the defendant in making and filing said written statement with the receiver, and in making oath to the same, was to obtain the lands described therein for the benefit of another person for whom by contract defendant was acting, the language of the indictment is as follows:

"* * * And so the grand jurors aforesaid, upon their oaths aforesaid, do say that the said Herbert Eddy, on the said 19th day of August in the year of our Lord 1899, within the county and district aforesaid, in and by his said statement in writing, verified upon his oath aforesaid, before the said receiver, willfully, corruptly, feloniously and contrary to the same oath of him, the said Herbert Eddy, did state and subscribe material matters in said statement contained which he did not then believe to be true, and which he knew were not true, in a case where a law of the United States authorized an oath to be administered. * * *"

This language contains a direct charge that the defendant, at the time and place given in and by his said statement in writing verified upon oath before the receiver, willfully, corruptly, feloniously, and contrary to his oath did state and subscribe material matters contained in the statement which he did not then believe to be true, and which he knew were not true, in a case where the laws of the United States authorized an oath to be administered; and by so charging the pleading meets every objection that can be urged on account of material defects in not alleging that the oath was willfully taken falsely, provided these allegations just referred to are part of the charge contained in the indictment, and are not merely the conclusion of the pleader. Upon this question I think it very safe to say that, had the framer of the in-

dictment placed the substance of the words just heretofore quoted at the beginning of the bill, there could have been no possible doubt of the sufficiency of the averment that the oath was willfully and corruptly taken, and if the pleading had been so drawn the language referred to would at once have been accepted as a prefatory and appropriate statement of the legal characteristics of the crime charged. But, being put near the close of the indictment, it has not been as easy to define their proper relation, whether they are part of the charge or merely inferential in the whole instrument. Such a difficulty, however, may arise in many instances in criminal pleadings where the general charging part of the indictment follows and does not precede the particular facts stating the mode in which the crime has been committed. Yet precedents and forms approving such a pleading as this are not lacking (Loveland's Forms Federal Practice, vol. 1, pp. 1161–1166); and if, without doing violence to the substance of the whole bill, it can be ascertained that a charge is directly made, the court should sustain the indictment, because the matter of putting it together is really one of form only, and in no way tends to prejudice the material rights of the defendant. After examining a great many decisions of the federal courts, I am satisfied that it is to such a case as this that section 1025, Rev. St. [U. S. Comp. St. 1901, p. 720], applies; and in accord with this statute, and the very liberal application made of it where questions of form are involved, it is the duty of the court to uphold the indictment as a sufficient charge of willful false swearing. Price v. U. S., 165 U. S. 311, 17 Sup. Ct. 366, 41 L. Ed. 727; U. S. v. Jolly (D. C.) 37 Fed. 108; U. S. v. Rhodes (C. C.) 30 Fed. 434; McDaniel v. U. S., 87 Fed. 324, 30 C. C. A. 670.

This ruling does not make it necessary to draw the conclusion of this indictment into the charge itself, for the pleader has closed the bill in other appropriate formal words, as follows:

"* * * And did commit willful, corrupt, and felonious perjury, against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided."

Thus has he made the final deduced statement of the law following the charging allegations of law and fact.

The defendant's next objection is that it is not averred in the indictment that Ranft had competent authority. But it is alleged that defendant appeared before Ranft, who was then and there the receiver of the United States land office within the district where the land described in the indictment is situated, and the said Herbert Eddy, then and there so being before the said Ranft, receiver as aforesaid, was in due manner sworn by the said receiver, who was then and there authorized by the laws of the United States to administer said oath, etc.

Section 2 of the stone and timber act requires statements to be verified by the oath of the applicant before the register or receiver of the land office within the district where the land is situated. Section 2246, Rev. St. [U. S. Comp. St. 1901, p. 1371], provides that the receiver or register is authorized to administer any oath required by law in connection with the entry or purchase of any tract of public lands. The courts will take judicial notice of the qualification of the receiver of

the land office to administer an oath, and an averment of the fact is unnecessary.   Babcock v. U. S. (C. C.) 34 Fed. 873.

My judgment, therefore, is that when this indictment is analyzed its seeming defects are due to some confusion in its form only, and that its plain meaning should prevail, the pleading being good in substance and sufficient to notify the defendant of what charge he must be ready to meet.

The demurrer is overruled, and the defendant must plead.