## A. J. PRICKETT v. STATE.

No. A-10910. Nov. 24, 1948.

Opinion on Rehearing and Rehearing Denied Jan. 5, 1949.

(200 P. 2d 457; 201 P. 2d 798.)

Falkenstine & Fisher, of Watonga, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, A. J. Prickett, was charged by information filed in the county court of Custer county, with unlawfully setting up and operating a certain slot machine, to wit: a marble board * * * which setting up, operating and conducting was for the purpose of having and allowing said slot machine to be played by others for money, property, currency, checks, chips, tokens, credits and other representatives of value, etc.

Upon a trial to a jury, the defendant was found guilty, and in conformity to the verdict of the jury the defendant was sentenced to pay a fine of $100 and costs, and has appealed.

The evidence introduced by the state and defendant showed substantially the following facts: The defendant was engaged in operation of marble or pin ball machines in several counties and had placed one of the machines styled "Marines At Play" in the Veatch drugstore at Custer City. This machine had been in the drugstore for five or six

weeks before it was seized by the sheriff. During this period of time, the machine was played by both adults and minors.

Albert Gorshing, sheriff of Custer county, testified that on April 9, 1947, he seized the machine in question after watching some highschool kids play it at Custer City. The machine was exhibited to the jury and was described by the sheriff as a marble board machine. The sheriff identified a slip of paper which was pasted to the machine which read as follows:

"Marines At Play

One re-play for each time 'Special' bumpers are hit.
One re-play for each letter bumper hit after Marines is lit.
To light Marines, hit letter bumpers in rotation, 'M' first, 'A' second, etc.

15 Re-Plays
for lighting numbers 1 to 12

To light numbers, hit red bumpers or non-lettered bumpers when lit.

Furlough Free Ball

To get free ball from furlough, ball must pass thru furlough granted.

Each time ball goes thru center rollover it registers 1,000— when red bumpers are lit, it registers one of the numbers 1 to 12.

44,000—1 Re-Play

46,000—2 Re-Plays

One Re-Play

for each 2,000 scored starting

with 48,000.

Score Void if machine is tilted."

The machine was operated by depositing five cents in a slot for which the player received five balls. The machine was played by releasing a plunger against the ball and as the ball hit different bumpers on the face of the machine, it would light up the letter and cause the score made by the operator to mount.

The assistant county attorney testified at length concerning the operation of the machine. He placed a nickel in the slot in the presence of the jury, pushed a lever which released five balls and then showed how another lever fed one ball at a time into the slot where it is struck by the plunger operated by the player. He further showed how if the player was fortunate enough, that his ball went into a certain hole after striking the various bumpers on the machine, the ball would be returned to a player for a replay. While the witness was playing the machine, one of his balls went in the furlough ball hole and was returned to the player. He further testified that the machine was made in Chicago and constructed so as to give automatic free games for certain scores, depending mostly upon the luck of the operator.

The defendant and his wife testified that defendant was the owner of the machine in question, and was operating similar machines in Blaine, Dewey and Custer counties. He admitted that the machine was constructed so as to give automatic free plays for a high score, and also would

give a free ball, but that he had pulled the electrical points apart at the time the machine was installed so as to prevent the free play or the free ball. When asked to explain how the machine when played by the assistant county attorney before the jury gave a free ball when the ball went into the furlough ball hole, he said that the mechanism of the machine had been changed after the machine was set up for operation; that the electrical points were so delicate that it might have been that the points were jarred when the machine was moved in handling by the sheriff.

On re-direct examination, the defendant admitted that even with the electrical contact points pulled apart so as to prevent the furlough ball from automatically returning to the operator, that the ball would return for a free play if another ball was shot by the player and came in contact with certain bumpers, which bumpers when hit would release the furlough ball for a free play.

Despite the fact that this court, in the case of Couch v. State, 71 Okla.Cr. 223, 110 P.2d 613, specifically held that a five ball marble machine operated for amusement only came within the prohibition of the slot machine statute (Tit. 21 O.S.1941 § 970), the defendant contends that by reason of the subsequent opinion of this court in the case of Delano v. State, 82 Okla.Cr. 258, 168 P.2d 659, such machine is legal and its operation in the manner in which it was being operated did not constitute a violation of the law.

Prior to the passage of the 1939 act under which the prosecution was instituted, the law against the operation of slot machines was passed in 1916, was set forth in section 2193 of the 1931 statutes, is now set forth in the statutes as Tit. 21 O.S.1941 § 944, and reads as follows:

"Any person who sets up, operates or conducts, or who permits to be set up, operated or conducted in or about his place of business, whether as owner, employee or agent, any slot machine for the purpose of having or allowing the same to be played by others for money, property, checks, credits or any representative of value shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than twenty-five dollars, nor more than one hundred dollars; or by imprisonment in the county jail for a term of not more than thirty days, or by both such fine and imprisonment."

Under the 1916 act, the ingenuity of man was constantly being used to try to comply with the letter of the act but to invent some machine that would violate the spirit of the law. State v. Johnson, 15 Okla.Cr. 460, 177 P. 926; Nelson v. State, 37 Okla.Cr. 90, 256 P. 939; Colbert v. Superior Confection Company, 154 Okla. 28, 6 P. 2d 791; Rogers v. Douglass, 181 Okla. 32, 72 P.2d 823; Mackay v. State, 65 Okla.Cr. 149, 83 P.2d 611.

The endeavor to develop coin operated or slot machines so as to circumvent legislative and judicial condemnation has been well stated in People v. Gravenhorst, Sp. Sess., 32N.Y.S.2d 760, 765, discussed in the 148 A.L.R. 880, in which it is stated:

"The type of machine which first met the condemnation of our court * * * was one in which the player by inserting a coin had the chance either of losing the amount played, or securing as a gain, other coins of varying denomination, the payment being in actual money. * * * An obvious effort to nullify the effects of the above (condemnation) was presented when the slot machine interests eliminated the pay-offs in money and substituted therefor the return to the successful player of additional merchandise, slugs or tokens, the latter being exchangeable for gum, mints, cigars, etc. Machines of this type were likewise condemned. * * * To avoid judicial disapprobation which the element of chance brought down upon these con-

trivances, the manufacturers proceeded to introduce a device to indicate to the operator in advance of play, exactly what the pay-off would be. The court held this subterfuge unavailing, remarking that the player gambles not so much on the immediate return but on the expectation that the indicator will show an opportunity for profit on his next play. * * * In their ceaseless endeavors to circumvent legislative and judicial condemnation, the contrivers next developed a machine resembling a cash register with a lever on the side, and in front, a column of packages of mints. Upon the deposit of a coin and the operation of the lever a package of mints was released. In addition the machine caused three cylinders to revolve at different rates of speed. Upon each cylinder were certain symbols and an incomplete sentence. The inscriptions on the three, however, when the cylinders ceased to spin and when these inscriptions were read together, formed complete sentences of a humorous vein. These machines sometimes delivered metal tokens which were purported to have no cash or trade in value and to be capable of use only for further amusement. These types of machines were declared illegal in numerous State and Federal decisions. * * * The next development in these machines * * * are known as the pin ball type of slot machine. * * * As an added inducement to the playing of these devices, a mechanism was inserted into the contrivance whereby the operator on attaining a certain score would be entitled to one or more free games which were automatically furnished."

The case of MacKay v. State, supra, decided October 21, 1938, was the last expression of this court in applying the slot machine act that was in existence prior to the passage of the 1939 law. In that opinion, Judge Barefoot reviewed the decisions of this court and the Supreme Court of Oklahoma in slot machine cases, and gave a lengthy review of many cases from other jurisdictions which construed statutes similar to the Oklahoma statute. In deciding that case, this court held that the name given a machine does not determine whether it should be classified as

a slot machine, but that question is determined by the manner and result of its operation; that the machine is prohibited if it is so operated that one who plays it stands to win or lose money, trade, or checks, by hazard or chance.

This was the status of the law in Oklahoma pertaining to slot machines when House Bill No. 125 was introduced in the Seventeenth Legislature in 1939, by Representative Creekmore Wallace of Oklahoma county. A review of the legislative history of that act is interesting. Representative Wallace declared that it was his purpose to make the act all inclusive and to eliminate all coin operated mechanical amusement devices, irrespective as to whether the result of its play was largely controlled by the element of chance or hazard or by skill of the operator. The majority of the committee to which this bill was referred by the House of Representatives brought in a report recommending that the bill do not pass. Representative Stovall presented a minority report recommending that the bill do pass. The minority report was adopted and the bill was placed on the calendar for final action. Later after debate on the bill, a motion to refer the bill to a special committee which would have had the effect of killing or amending the bill so as to restrict its application, lost by the narrow vote of forty-seven to fifty-six. The bill then passed the House of Representatives without any change being made in the bill as introduced by Representative Wallace. The Senate then passed the bill with only minor revisions in that part of the bill pertaining to the duties of Peace Officers, but no change was made in Sections 1, 2, 6 or 7. The House of Representatives concurred in the Senate amendments. The bill was passed and approved by the Governor with the emergency clause attached on April 28, 1939.

The following are the pertinent provisions of this act:

"Section 1. That, for the purpose of this Act 'slot machine' is defined to be:

"First: Any machine, instrument, mechanism or device that operates or may be operated or played mechanically, electrically, automatically or manually, and which can be played or operated by any person by inserting in any manner into said machine, instrument mechanism or device, a coin, chip, token, check, credit, money, representative of value, or a thing of value, and by which play or operation such person will stand to win or lose, whether by skill or chance, or by both, a thing of value; and

"Second: Any machine, instrument, mechanism or device that operates or may be played or operated mechanically, electrically, automatically, or manually, and which can be played or operated by any person by paying to or depositing with any person, or by depositing with or in any cache, receptacle, slot, or place a coin, chip, token, check, credit, money, representative of value, or a thing of value, and by which play or operation such person will stand to win or lose, whether by skill or chance, or by both, a thing of value.

"Section 2. That for the purposes of this Act 'a thing of value' is defined to be any money, coin, currency, check, chip, token, credit, property, tangible or intangible, amusement or any representative of value or any other thing, tangible or intangible, calculated or intended to serve as an inducement for anyone to operate or play any slot machine or punch board.

\*    \*    \*    .\*    \*    \*

"Section 6. That it shall be unlawful for any person to have in his possession any slot machine or punch board, or sell or solicit the sale, take orders for the sale of, or lease

or rent any slot machine or punch board in this State, and any person violating the provisions of this Section shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than Fifty (.$50.00) Dollars nor more than One Hundred Fifty ($150.00) Dollars or by imprisonment in the county jail for. a term of not more than sixty (60) days, or by both such fine and imprisonment.

"Section 7. Any person who sets up, operates or conducts, or who permits to be set up, operated or conducted, in or about any place of business, or in or about any place, whether as owner, employee or agent, any slot machine for the purpose of having or allowing same to be played by others for money, property, tangible or intangible, coin, currency, check, chip, token, credit, amusement or any representative of value or a thing of value, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than Fifty ($50.00) Dollars nor more than One Hundred Fifty ($150.00) Dollars, or by imprisonment in the county jail for a term of not more than sixty (60) days, or by both such fine and imprisonment." 21 O.S.1941 §§ 964, 965, 969, 970.

The 1916 act (Tit. 21 O.S. 1941 § 944) prohibited the setting up of a slot machine for the purpose of having the same played for money, property, checks, credits, or any representative of value. There was no attempt in the 1916 act to define a "representative of value" as used in the act, but the 1939 act herein involved specifically defined the term "thing of value", and by its definition a thing of value is amusement or any other thing tangible or intangible, calculated or intended to serve as an inducement for any one to play any slot machine. The language of the 1939 act is broad and restrictive enough to eliminate all forms of coin operated machines, but the act would be inapplicable in so far as it would affect the operation of a machine which could

not by any reasonable intendment be considered as dangerous or injurious to the public health, safety or morals.

Immediately after the passage of the 1939 law, an action in habeas corpus was instituted in the Criminal Court of Appeals of Oklahoma, by the operator of a certain slot machine, to wit: a Cenco Marble Board for the purpose of testing the constitutionality of said act and to determine whether, if said act were constitutional, it applied to the machine in question. Under the stipulation of facts, among other things, it was agreed:

"That said marble, pin and ball machine aforesaid, is operated mechanically, automatically and manually and may be played by inserting a coin in a slot whereupon five balls, or marbles, are directed into a chute for playing, by the player, by lifting the marbles, or balls, upon a chute that are played on the surface by plunger operated by the player: upon being played on such board the balls, or marbles, strike pins, springs or slots thus creating a score which is shown upon the board being a part of the device, no prizes are automatically offered, or paid in any sum, neither is there any cash, merchandise, checks or other things of value given, offered or obtained for the player of same, but the player plays said device for his own temporary amusement and no inducement is held out to him whereby he may obtain or lose anything of value on account of playing said machine, as aforesaid."

This court, in an opinion by Judge Doyle, handed down on June 14, 1939 (Ex parte Davis, 66 Okla. Cr. 271, 91 P. 2d 799) sustained the constitutionality of said act. It was further held that under the police power the state had the right to determine what is dangerous and injurious to the public morals and the public welfare of its inhabitants. It was held that the machine described by the stipulation of facts was prohibited by the act and upheld the right of the Legislature to legis-

late against this character of machine without regard to whether or not the machines are kept or operated for gambling purposes.

Subsequently, one Charles Couch was convicted in the court of common pleas of Oklahoma county, with operating a slot machine, to wit: a Five Ball Marble Board located in his cafe in Oklahoma City, which machine was operated for amusement only although it was so constructed that a free game could be given if a certain bumper on the board was struck by a ball, but the mechanism which automatically gave the free game was not connected so as to give the free game at the time the machine was being operated. The score of the operator was achieved largely by the element of hazard or chance. This court, in affirming the judgment of the lower court, followed the decision of Ex parte Davis, supra, and held that the Legislature had in mind such machines at the time the broad prohibition was adopted as set forth in the 1939 act. Couch v. State, 71 Okla. Cr. 223, 110 P. 2d 613.

Thereafter, the 1939 act again came before this court for interpretation in the case of Delano v. State, 82 Okla. Cr. 258, 168 P. 2d 659, 660. In that case, this Court discussed the 1939 act more fully than was done in Couch v. State, supra, and laid down certain rules to govern the determination as to whether a mechanical device may be considered a slot machine under the statute as follows:

"Before a mechanical device may be considered a slot machine under statute, 21 O.S. 1941 § 964, it must be shown that it is: First, a machine, instrument, mechanism or device that operates or may be operated or played mechanically, electrically, automatically, or manually; second, which can be played or operated by any per-

son by inserting in any manner into said machine, instrument, mechanism, or device a coin, chip, token, check, credit, money, representative of value, or thing of value; third, by which play or operation such person will stand to win or lose; fourth, whether by skill or chance, or both; fifth, a thing of value."

The Hitler Electric Ray Machine involved in that case was compared to the ordinary shooting gallery. The score one made upon the machine was dependent solely upon the skill of the player in shooting the gun which was loaded with an electric ray. The electric beam was shot from the gun in the same manner that leaden bullets were fired from a rifle in an ordinary shooting gallery.

In the body of the opinion it is stated:

"It has not been pointed out by the state whereby the machine in question is injurious to public morals so that this court might say that the Legislature had in mind prohibiting the operation of said machine in the passage of the statutes in question. The machine is not dangerous, and for this court to hold that its operation was prohibited by statute would render liable to prosecution an individual operating music box machines, cigarette or candy coin vending machines, automatic parking meters, coin meters on transportation busses, pay toilets, or weighing machines. These are all mechanical devices whereby a person inserts a coin and receives something commensurate in value to the coin deposited. As shown by section 972 of the statute, supra, the Legislature declared the slot machines as defined by section one of the act to be gambling devices. It was at the evil of gambling to which the statute was directed. The machine involved can in no way be said to be a gambling device. It is true that persons may gamble on their skill and the score they might make in shooting at Hitler's image, but the same argument would apply to shooting in any ordinary shooting gallery where a per-

son deposits the consideration with the owners of the gallery and is permitted so many shots with lead bullets for the consideration paid to the operator.

"In recent years there has been a continuous increase of coin operated automatic devices in establishments patronized by the public, particularly in those places of business furnishing meals or amusement. Many of the machines were manufactured so as to come within the law, but the law against gambling was being circumvented by the giving of tokens good for free games for certain scores made on the machine. These tokens were often redeemed by cash or merchandise. To hit at this evil the Legislature defined 'amusement' as a 'thing of value.' After the passage of the law, any machine giving a free game for high scores would come within the prohibition of the statute.

"The state virtually concedes that the machine is not a gambling device. Bouvier's Law Dictionary, Rawle's Third Revision, p. 1331 defines gaming 'as a staking on chance where chance is the controlling factor.' As already shown, the hits registered upon Hitler's image were dependent upon skill.

"In Couch v. State this court did not interpret the section of the statute wherein it provides that a player must win or lose something of value. We were concerned chiefly with the question as to whether amusement was a thing of value, the defendant contending under the doctrine of ejusden generis that it was not. It appears to us that the phrase 'win or lose' inserted in the statute was therein placed so as to require the player to win or lose something by his play. It was not necessary that he win or lose, but if the machine is one whereby he might win or lose something of value by his play, then the operation of the machine is prohibited by the statute."

Council now state that in view of the opinion of this court in Delano v. State, supra, that the marble or pin

ball machine herein involved is not within the prohibition of the statute, and that if it is within the prohibition of the statute, then all mechanical coin operated devices, such as music box machines, cigarette or candy vending machines, coin meters on transportation busses, weighing machines, etc., are unlawful.

It was not the purpose of the legislative act to condemn a machine simply because its initial operation was commenced by depositing a coin in a slot. We see in actual operation every day machines which are coin operated and might technically be designated as slot machines, but which no human mind ever associated with something condemned by law. These would include parking meters, pay toilets, cigarette vending machines, etc.

In Ex parte Davis, supra, Couch v. State, supra, and Delano v. State, supra, this court was not favored with a brief by the state upon the questions involved, and in the instant case a brief is filed without the citation of authorities although, authorities upon the questions involved are plentiful. Some of them are annotated in 132 A.L.R. 1004, 135 A.L.R. 104, and 148 A.L.R. 880.

In the case of State ex rel. Green v. One 5¢ Fifth Inning Base Ball Machine, 241 Ala. 455, 3 So. 2d 27, 29, the Supreme Court of Alabama held that the machine there involved was a gambling device under the Alabama code, though it was played only for amusement.

In the opinion it is stated:

"Defendant insists this act is penal and subject to strict construction, all of which may well be conceded. But here the language is plain and unambiguous. We take judicial knowledge of conditions generally known of all men, that prevailed in this State prior to the pass-

age of this act and evidently inspired the same. What were known as 'slot machines', 'pin ball machines', 'one armed bandit' machines and various other mechanical devices and inventions were distributed throughout the State, stimulating the gambling spirit in the citizens and corrupting the morals of the people.

"It was to curb this evil that the 1931 Act was passed. A question similar to that here presented was before the Florida court, and the following observation taken from the opinion of that court in Eccles v. Stone, 134 Fla. 113, 183 So. 628, 631, is applicable here:

" 'It is a matter of common knowledge, of which we must take judicial cognizance, that the lure to play the slot machine had become so great as to undermine the morals of many and to lead to the commission of or the indulgence in vices and crime to procure the coins with which to play the machines.

" 'So the legislature of 1937 carried out the mandate of the majority of the people of the State, and the members their pledges to their constituency, to pass acts which would prohibit the operation of coin-operated gambling devices in this State and enacted Chapter 18143.

" 'It is also a matter of common knowledge that pursuant to the passage of that act the popular slot machine with its set of pictured wheels, its alluring jackpot and its pull lever, generally known as the one-armed bandit, faded away from the public places and immediately in the places where they had stood were set up the mechanical horse races, marble pin games and other coin-operated mechanical devices, adapted and fit for fast, easy gambling; and it is a matter of common knowledge, of which we cannot plead ignorance, that these machines are generally used as gambling devices and that the gambling element is the principal lure which causes them to be played by the public.' "

In the case of Alexander v. Martin, 192 S. C. 176, 6 S. E. 2d 20, 23, the court stated:

"It is clear that the law condemns any devices pertaining to games of chance, of whatever name or kind, except certain types of machines therein mentioned which are so constructed as to give a certain uniform and fair return in value for each coin deposited therein, and in which there is no element of chance. Petitioners argue that while in the playing of their machines there is present some element of chance as to the score which may be made, there is no hazard or chance involved in what the player received,—which is the amusement he derives from the playing of the game.

"While it is true that the player receives the same number of balls for each coin deposited, he may or may not make the same score for each coin's worth of balls played. This in itself is an element or contingency, dependent upon chance, and would make of the machine an unlawful device, inasmuch as the law above quoted condemns all vending or slot machines or other devices pertaining to games of chance, which display different pictures, words or symbols at different plays, or different numbers, whether in words or figures, or which deposit tokens or coins at irregular intervals, or in varying numbers to the player or in the machine.

"In addition to this, contingent upon the score recorded for a player, free games are awarded. Therefore, it is clear that the lure and inducement to the player to operate the machine is the chance of occasionally being allowed to play a game or games without additional cost. This feature, we think, clearly pertains to a game of chance. And this is true, whether the machine is played for amusement or for other returns, such as money.

"Amusement is recognized by the courts as a thing of value, and where the amount of amusement given the player of the machine is determined by chance or hazard, such machine is held to be a gambling device."

In the case of Stanley v. State, 194 Ark. 483, 107 S.W. 2d 532, the Supreme Court of Arkansas held (Syllabus):

"A novelty baseball game machine operated by placing coin in slot so as to release plunger and five steel balls for play on a field set with bumper springs which directed balls into various slots as outs or runs, thus determining winning score as recorded on electric score board was subject to seizure under statute as a 'gambling device,' notwithstanding no prize was offered for any particular results, since only reasonable and profitable use to which it might be put was as a game of chance (Crawford & Moses' Dig. § 2630)."

In all of the many cases cited by the various courts of the United States, we have found none with a statute as broad and comprehensive as the Oklahoma statute. In many of them, such as the three just above cited, the statutes merely prohibit gambling devices and left the interpretation to the courts as to whether the machines involved were gambling devices under the statute. The inducements to gamble presented by machines similar to the one here in controversy were influential factors in causing the Oklahoma Legislature to act. It was this gambling influence that enabled the Legislature to act under their police power, otherwise the act would be invalid.

Under the Oklahoma law, amusement has been defined to be a thing of value. It is true that for each coin deposited in the machine, the operator receives the same number of balls, but there is not a uniform score received by each operator for each coin deposited. The amount of amusement won or lost by the operator is determined largely by hazard or chance, or, as testimony discloses in this case, by "luck of the operator". It is apparent that the operator receives some amusement for each coin operated. However, the amount of amusement received is not uniform and always the same. It varies with each coin deposited. He can win more amusement,

that is, receive a higher score, if the goddess of chance smiles upon him and the balls which he propels strike the correct bumpers on the machine. We make this observation for reason that counsel for the defendant contends that the proof affirmatively discloses that the machine in question at the time of its operation did not permit free balls or free games to be awarded to the player. We do not agree that the record affirmatively discloses this fact. The evidence of the state is to the contrary. However, regardless of whether the free ball or free game was given, the operation of the machine in question is prohibited by the statute.

The manner and result of the operation of the machine in question establishes to our mind that it comes under the classification of a slot machine as defined by the statute in Tit. 21 O.S. 1941, § 964 et seq. With this conclusion established, it becomes unnecessary to decide the other questions presented.

The judgment of the county court of Custer county is affirmed.

BAREFOOT, P. J., and BRETT, J., concur.

On Rehearing.

JONES, J. Permission was granted to counsel representing parties allegedly operating machines similar to the one out of which this prosecution was instituted to file briefs amici curiae in support of the petition for rehearing filed by the defendant.

Counsel in their briefs have stated that there are a large number of these machines in operation in Oklahoma in drugstores, cafes, pool halls, and other establishments, and that some cities have licensed their operation.

It should be borne in mind that since the passage of the law in 1939, 21 O.S. 1941 § 964 et seq., prohibiting the operation of these machines, this court has twice held that pinball or marble machines operated for amusement only were prohibited by the act. Ex parte Davis, 66 Okla. Cr. 271, 91 P. 2d 799; Couch v. State, 71 Okla. Cr. 223, 110 P. 2d 613.

To have held otherwise would have nullified the legislative act which prohibited the setting up of these machines "to be played by others for money, property, tangible or intangible, coin, currency, check, chip, token, credit, amusement, or any representative of value or a thing of value." 21 O.S. 1941 § 970.

It is apparent that the Legislature intended to absolutely prohibit the operation of these machines. No plainer language could have been employed to express the legislative·intent to prohibit the operation of these machines irrespective as to whether they were played for free games, prizes, or merely for the amusement of the player.

It was properly a function of the Legislature to determine in the exercise of the police power whether the operation of such machines tended to be injurious to the health, safety, morals, or general·welfare of the public. It is not within the power of the court to strike down a legislative enactment unless it is clear that there is no reasonable basis upon which the act might be sustained. There is a strong presumption in favor of the constitutionality of every legislative act, and in so far as slot machines are concerned, it is a matter of common knowledge that they are generally adapted to fast, easy gambling; that the label "for amusement only" placed on many machines is a subterfuge to deceive enforcement

officials and hamper them in prosecutions for gambling. The Legislature with a full knowledge of these conditions has prohibited the operation of such machines for amusement or for any other purpose.

Counsel have reiterated that the opinion herein is contrary to the ruling in Delano v. State, 82 Okla. Cr. 258, 168 P. 2d 659. There is a reasonable basis for this contention in view of some of the statements made in the Delano case. As was stated in the opinion herein, there has been a noticeable absence of briefs in the adjudicated cases. Our opinion and research in the absence of thorough briefs on behalf of the state in the former cases have been directed to the point raised by the defendant in each of said cases. We have made a more thorough research into the decisions of courts of other jurisdictions and the statutes of other states and the legislative background of the 1939 act in the instant case than in any of the others. If the state had fully briefed the Delano case and had argued their cause with their known ability and enthusiasm, the Delano opinion might have been decided on another basis than the one which was discussed.

To avoid any confusion in the application of the rules of law set forth in the opinion in the instant case, and in the other cases construing the 1939 act, it is ordered that the decisions in those cases in so far as they conflict with the opinion herein, if there is any conflict, are modified to conform to the opinion herein.

The petition for rehearing is denied and the mandate is ordered to be issued immediately.

BAREFOOT, P. J., and BRETT, J., concur.