STATE v. SANDFER.

No. A-11316. Jan. 10, 1951.

Rehearing Denied March 14, 1951.

(226 P. 2d 438.)

230

Mac Q. Williamson, Atty. Gen., Fred Hansen, Asst. Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Elmer W. Adams, County Atty., Tulsa County, Tulsa, for plaintiff in error.

Wheeler & Wheeler, Tulsa, for defendant in error.

Bert B. Barefoot, Jr., and C. D. Stinchecum, Oklahoma City, amici curiae.

POWELL, J.   The defendant in error, C. F. Sandfer, was charged by information filed in the court of common pleas of Tulsa county with the violation of sections 965 and 970, Title 21 O.S.A., the said information, omitting caption and signature, reading:

"That Elmer W. Adams, the duly qualified and acting County Attorney for Tulsa County, Oklahoma, who prosecutes in the name and by authority of the State of Oklahoma, comes now into Court of Common Pleas within and for Tulsa County, State of Oklahoma, on this the 19th day of July, A.D. 1949, and gives the Court to understand and be informed that on the 19th day of July, A.D. 1949, and prior to the filing of this information in Tulsa County, State of Oklahoma, said defendant in said County, and within the jurisdiction of this Court, did unlawfully, knowingly and wilfully set up, operate and conduct one Kilroy Marble Board serial number 9783, in a place of business known as the Lewis Cafe located at Archer and Greenwood Streets in the city of Tulsa,

Tulsa County, Oklahoma, that said marble board was so constructed and designed that it did give free games, calculated and intended for the purpose of an inducement for persons to operate and play said machine in violation of Title 21, Section 965-970 of the Oklahoma Statutes Annotated as amended and appearing in the supplement to such statutes in such cases made and provided, and against the peace and dignity of the State."

The case was tried without a jury before Hon. Leslie W. Lisle, Judge, on June 29, 1949, who on consideration of a stipulation entered into between the parties and other evidence, including the testimony of two legislators, who testified on behalf of defendant as to their understanding of the intent of the Legislature in enacting the 1949 law referred to in the information, found the defendant not guilty of the charge for which prosecuted. The minutes entered read:

"Court finds defendant not guilty as charged, no offense committed within the meaning of the Act. Defendant released and bond exonerated, to which State excepts, reserving all questions of law."

The court also filed a written opinion in the case. The county attorney filed a motion for new trial, and same being overruled, appeal was duly perfected to this court, as provided by par. 3, Tit. 22 O.S.A. 1941 § 1053.

On appeal the state sets out in petition in error:

"That said court in determining said cause erred in its interpretation of the effect of House Bill 207 of the 1949 Legislature, amending Tit. 21, O.S.A. §§ 965 and 970, having to do with the operation of slot machines, marble boards and other coin operated machines, or devices.

"Error of the court in holding that under the provisions of said Act, it authorizes or permits the operation

of marble boards which give free games automatically tendered by the machine."

A pertinent portion of the stipulation in question reads as follows:

"Upon inserting a five cent coin into a slot of said board, five balls, or marbles, are mechanically directed into a tray or chute for playing one game. One ball at a time is played or shot by pulling back and releasing a plunger which drives the ball onto the inclined surface of the board. Whereupon, the ball rolls down the surface to the bottom of the board. Upon the surface of the board and in the path of the rolling ball there are various springs, pins, and holes and, as the ball makes contact with the springs, pins, and holes, a score is created and automatically shown upon the board. As each of the five balls is played and makes contact with the springs, pins, and holes, the total score increases. When the fifth ball is played and rolls to the bottom of the board the game is ended. No prizes of any kind or nature are automatically offered or paid in any manner or in any sum for or on account of a high score or otherwise, except free games. Neither is there any money, property, tangible or intangible, coin, currency, check, chip, token, credit, or any representative of value or thing of value, except amusement or entertainment, by way of free games, given or offered to or obtained by the player of said board. However, in the event of a certain score, said Marble Board does automatically, and without the paying to or depositing with any person or depositing with or inserting into said board of any cache, receptacle, slot, or place of any money, property, coin, currency, check, chip, token, credit, or any representative of value, or thing of value, prolong the amusement and entertainment of the player by giving a free game consisting of five balls, which free game, except for the deposit of a five cent coin, is played as the original game. The player operates said board for his own amusement and entertainment and does not stand to win or lose, whether by skill, or chance, or both, any money, prop-

erty, tangible or intangible, coin, currency, check, chip, token, credit or any representative of value or a thing of value, nor any other thing except a free game."

Counsel amici curiae in brief correctly state that:

"Unless the marble board as operated in this case is outlawed by said statute, the operation thereof is not prohibited by law as there are no common law crimes in Oklahoma." Cited is Stewart v. State, 4 Okla. Cr. 564, 109 P. 243, 32 L.R.A., N.S., 505.

Also it is correctly stated that:

"The only issue presented to the trial court, and by this appeal, is whether the free game feature of this marble board is prohibited by the 1939 slot machine statute, as amended in 1949."

Under the 1939 Act, Laws 1939, p. 9, Sec. 1 et seq., Tit. 21 O.S.A. 1941 §§ 964-977, the operation of a pin ball machine was illegal regardless of whether the machine gave free games or other remuneration for high score or was merely played for the amusement of the player. Antrim v. State, 92 Okla. Cr. 91, 220 P. 2d 846; Prickett v. State, 88 Okla. Cr. 213, 200 P. 2d 457; same on rehearing, 88 Okla. Cr. 232, 201 P. 2d 798.

The 1949 Legislature amended § 965 and § 970 of Tit. 21 O.S. 1941, being the 1939 Act, by House Bill 207.

Section 965 was amended by the deletion of the word "amusement" at one point, and adding the words *except amusement or entertainment*" at another point, so that the statute now reads (the deleted words appearing in brackets, and the added words italicized):

"For the purpose of this Act, 'a thing of value' is defined to be any money, coin, currency, check, chip, token, credit, property, tangible or intangible, [amusement] or any representative of value of any other thing, tangible or intangible, *except amusement or entertain-*

*ment,* calculated or intended to serve as an inducement for anyone to operate or play any slot machine or punch board."

Section 970 was amended in the same manner as Section 965 and we quote the pertinent portion, with the deleted word appearing in brackets and the added words italicized:

"Any person who sets up, operates or conducts, or who permits to be set up, operated and conducted, in or about any place of business, or in or about any place, whether as owner, employee, or agent, any slot machine for the purpose of having or allowing same to be played by others for money, property, tangible or intangible, coin, currency, check, chip, token, credit, [amusement] or any representative of value or a thing of value *except amusement or entertainment* * * * shall be deemed guilty of a misdemeanor, * * *."

The title of the 1949 Act is as follows:

"An Act amending 21 Oklahoma Statutes, 1941, Sections 965 and 970; providing that it shall not be unlawful to operate machines, instruments, mechanisms or devices which provide amusement or entertainment only; restricting the location thereof; and declaring an emergency."

But see Title to the 1939 Act, p. 8, H.B. 125, S. L. 1939.

From the trial court's opinion filed in the case it is apparent that in searching out the intent of the 1949 Legislature that he relied to a great extent upon the testimony of two members of the Legislature who testified in support of the defendant's interpretation of the amended Act. The court also considered an opinion that the Attorney General had furnished the county attorney of Grady county dated May 28, 1949, and in which he had expressed his "understanding" of the intention of the

Legislature in enacting House Bill 207 (which was contrary to the "understanding" of the two legislators testifying), as expressed to him by certain other legislators. Also set forth in briefs filed herein were statements and allegations and admissions said to have been made by the attorneys amici curiae, who represent the Oklahoma Coin-Machine Operators Association, purportedly contained in brief filed in this court wherein a rehearing was sought in Prickett v. State, 88 Okla. Cr. 213, 200 P. 2d 457, Id., 88 Okla. Cr. 232, 201 P. 2d 798.

In Davis v. Childers, State Auditor, 181 Okla. 468, 74 P. 2d 930, a portion of the second paragraph of the syllabus reads:

"Testimony of individual legislators or others as to happenings in the Legislature is incompetent, since that body speaks solely through its concerted action as shown by its vote."

And in the body of the opinion it is stated:

"The Legislature's intention can only be shown by its vote. 'If the intent of the Legislature is to be shown by inquiring of the members what was intended, it would be necessary to interrogate all the members of both the Senate and the House. Besides being an interminable job, it is not conceivable that a common intent would be the result.' Barlow v. Jones, 37 Ariz. 396, 294 P. 1106."

The understanding of individual legislators, or the Attorney General of the legislative intent, should not have been considered by the court.

The correct rule of interpretation of a legislative act is set out in Couch v. State, 71 Okla. Cr. 223, 110 P. 2d 613, 616, and quoted in the opinion of the trial court, and being:

"A primary rule of construction is that the intention of the Legislature is to be found [1] in the ordinary meaning of the words of a statute, [2] in the connection in which they are used and [3] in the light of the mischief to be remedied."

A further rule that we must keep in mind is set out in State v. Waite, 156 Kan. 143, 131 P. 2d 708, 148 A.L.R. 874, and approved by this court in Delano v. State, 82 Okla. Cr. 258, 168 P. 2d 659, 662, and being:

"A rule of strict construction is to be applied to criminal statutes and courts should not extend them to embrace acts or conduct not clearly included within the prohibitions of the statute."

This court, through Furman, P. J., in City of Shawnee v. Landon, 3 Okla. Cr. 440, 106 P. 652, 653, said:

"It is a fundamental principle of criminal law, based on manifest justice, that penal statutes are not to be enlarged by implication or extended by inference. No person can be convicted of a crime unless the act committed is clearly within both the letter and spirit of a penal statute."

With the above statutory provisions and the interpretation placed on the same by this court in such cases as Couch v. State, 71 Okla. Cr. 223, 110 P. 2d 613; Ex parte Davis, 66 Okla. Cr. 271, 91 P. 2d 799; Antrim v. State, 92 Okla. Cr. 91, 220 P. 2d 846; Delano v. State, 82 Okla. Cr. 258, 168 P. 2d 659, and Prickett v. State, supra, in mind, and considering the Act since the 1949 amendment, aided by the general principles of law just set out, we commence our consideration of the problem.

We are forced to recognize at once that the purpose of the Legislature in enacting the 1939 Act was to strike at the evil of gambling for something of value. Delano v. State, supra; Antrim v. State, supra; Prickett v. State,

supra; and Colbert v. Superior Confection Co., 154 Okla. 28, 6 P. 2d 791. The Act specifically provides that amusement was a thing of value, and thus outlawed all manner of marble boards, machines, instruments, mechanisms, or devices which operated in such manner that a person playing the same would stand to win or lose, whether by skill or chance or both, a "thing of value", as that term was defined in the statute.

The 1949 amendment as heretofore detailed, 21 O.S. Supp. 1949, Sec. 965, simply eliminated "amusement" as a thing of value, thereby legalizing the use of a marble or pin ball machine as herein involved, when used only for amusement, and as limited by the further provisions of the statutes.

Concerning the marble board herein, as stipulated, the player by depositing five cents is privileged to play five separate plays with the steel balls, and each play will produce a score, and each score won may vary in value from the other. On completion of the five plays one may have attained the maximum total score by reason of luck or skill or both, or his total score may have been far short of the maximum and his expectations or hope. The player thus may have obtained the maximum in amusement for his money or he may have received disappointment, as the case may be. It is true that the element of luck or chance or skill involved in producing the total score has in the past been determined by this and other courts as appealing to one's propensity to gamble and for such reason has been held illegal, see Prickett v. State, supra, Antrim v. State, supra, yet the 1949 amendment cancels this holding and without doubt such use of the marble board has been legalized, and there can now be no question of the validity of the use of the machine herein involved so far as the initial game

is concerned, and of such machines as the electric ray machine as involved in Delano v. State, supra, where the court held for the defendant even under the 1939 Act but where the case was weakened by language with reference to the same used on rehearing by the court in Prickett v. State, supra. Where the use of the board or machine for a uniform sum is for a uniform number of plays, such use has been recognized as for amusement in Ex parte Davis, 66 Okla. Cr. 271, 91 P. 2d 799, and Couch v. State, 71 Okla. Cr. 223, 110 P. 2d 613, though such operation was held illegal under the Act prior to amendment.

The problem in the within case, of course, is the legality of free games under the Amended Act, the procurement of which is dependent predominantly upon chance or hazard, and is without doubt the lure extended by the device to the player. It unquestionably is additional amusement. To violate the Amended Act, however, the player must have received something more than additional amusement. The defendant argues:

"The initial game being amusement or entertainment [by force of the amendment] by what process of reasoning can it be said that the prolongation of that amusement or entertainment, through a free game, is not amusement or entertainment but something different? There is no chance for the player to receive anything for his coin except one game and, if his score is high enough, an additional game, but nothing else. He can't get money, coins, currency, checks, chips, tokens, credit, property or any representative of value except a bonus game."

This argument is fallacious in that overlooked is the fact that while in the initial game the player obtained what he paid for (which was the right to make five plays and obtain a score on each play, with a goal of a perfect or maximum score and nothing more), where by

reason of the high score or particular score, the player obtains something more—even a free game—under such situation, the player is induced to put his nickel in the machine in part by the knowledge that he will get a right to make five plays on the machine; that is, obtain five cents worth of amusement, and in part by the hope that he will receive something additional, not represented by a token or check, which is specifically forbidden, Tit. 21 O.S. 1941 Supp. § 970, but by a light announcing a score that has won for him the right to additional amusement. No doubt this possibility of winning the right to the additional free game or games, as the case might be, is the element engendering and appealing to the player's propensity to gamble, or as expressed in note at page 882 of 148 A.L.R., the thing "affording the necessary lure to indulge the gambling instinct." The fact of the additional amusement, under such circumstances, would seem incidental, as the evil involved is the very thing the 1939 Act sought to strike down, and the intervening right obtained, which right had to come into being in order that the player might be entitled to the additional free game, was a property right.

Tit. 25 O.S.A. § 26(1) provides that "The word 'property' includes property, real and personal", and § 26(3) provides that "The words 'personal property' include money, goods, chattels, things in action and evidence of debt." And Tit. 60 O.S.A. § 9 provides that: "Every kind of property that is not real is personal." And see § 312 of same title.

This property right might have been evidenced by a token, but was evidenced by a light. The light like the token was of no intrinsic value in itself. But like a token it entitled the player to something additional. It evidenced the right to an additional game. The opera-

tor of the machine was obligated. If the operator should prevent the player from exercising his right to the free game, his damages would be five cents—a fixed sum. What would be the difference in principle whether this right entitled one to additional amusement or to merchandise or to money? Obviously none in principle. Yet in spite of this it is argued that the Legislature intended to legalize free games because amusement is no longer defined as a thing of value. Concededly this is true by force of the amendment as to the initial game, and makes the initial game strictly operation or playing for amusement, as heretofore indicated, but between the initial game and the free game comes the intervening factor above mentioned. But counsel for defendant urge that this right to a free game could not be a property right, contending that it does not come within the definition of § 103, Tit. 21 O.S. 1941, defining personal property as:

"The term 'personal property' includes every description of money, goods, chattels, effects, evidences of right in action, and written instruments by which any pecuniary obligation, right or title to property, real or personal, is created or acknowledged, transferred, increased, defeated, discharged or diminished."

It was held by the Supreme Court of Oklahoma in First National Bank of Healdton v. Dunlap, 122 Okla. 288, 254 P. 729, 52 A.L.R. 126, that the definitions contained in the sections of which section 103 is a part, are applicable only as to crimes against property. Clearly, the definition is not exclusive, and it would appear that this right obtained comes within the general definition of Tit. 25 O.S.A. § 26(1) and (3), and Tit. 60 O.S.A. § 9 and § 312, and is not in conflict with any other statutory provision.

That the right involved is a personal property right is supported by a California court where the principle involved was considered in the case of People v. Settles, 29 Cal. App. Supp. 2d 781, 78 P. 2d 274, 277, and where the court said:

"The duty of the operators of this game to permit the winner to play further games free is an obligation arising from contract, and the right of the player in the matter is personal property".

In Broaddus v. State, 141 Tex. Cr. R. 512, 150 S. W. 2d 247, the right entitling a player to a free game was treated as a property right.

The right is a valuable right, being worth five cents by fact of being redeemable in an extra game, and in truth it is possible that the player, if lucky, may continue to win a number of free games consecutively. The thought that the right is a valuable one is supported in principle in the case of People v. One Pinball Machine, 316 Ill. App. 161, 44 N. E. 2d 950, where the machine involved did not pay checks, tokens or money, but if the player were fortunate enough to secure the requisite scores the machine would automatically register free plays, as in the within case, to which the player was entitled without the paying of additional money or deposit of any check, token or other thing of such character. As a part of the third syllabus, the court said:

"* * * the right to continue operation of the machine for amusement being a thing of 'value' within statutes directed against gaming."

This case may be referred to for a review of the authorities analyzing the evil at which the Legislatures of the various states have sought to strike by the enactment of legislation similar to that enacted in this state.

242

And though the 1939 Act as amended was weakened and relaxed, yet a careful study of the provisions as a whole convinces us that the purpose of the Act as amended remains the same and to acquiesce in the theory of the defendant would mean the practical nullification of the Act so far as limiting marble boards, slot machines, and such devices strictly for amusement purposes. We conclude the free game by chance theory is in conflict with the very purpose of the Act, and in conflict with the plain wording of the statute, Tit. 21 O.S. 1941, Supp. §§ 965 and 970, in that the free game is predicated and based on a personal property right first won. This being so, in the absence of specific language permitting marble boards and like devices to be played for additional free amusement, we must interpret the Act by giving the words of the statute their ordinary meaning in the connection in which they are used, and in the light of the mischief to be remedied, Couch v. State, supra, and so construing the same, we must and do hold the winning by chance of free games on the machine in question, illegal, and in violation of Tit. 21 O.S. 1941 Supp. §§ 965 and 970.

The judgment entered by the trial court, after trial before the court without a jury, having been in favor of the defendant and he having been discharged, the appeal was not and could not be from that feature of the judgment entered, but the appeal was upon a question of law reserved by the state as provided by Tit. 22 O.S.A. § 1053. The opinion of this court, therefore, as far as the within case is concerned, simply settles a question of law and does not affect the verdict of acquittal. State v. Gray, 71 Okla. Cr. 309, 111 P. 2d 514; State v. Waldrep, 80 Okla. Cr. 230, 158 P. 2d 368, and State v. Moyers, 86 Okla. Cr. 101, 189 P. 2d 952.

The judgment of the court of common pleas of Tulsa county holding that under the provisions of Tit. 21 O.S. 1941 §§ 965 and 970, it authorizes and permits the operation of marble boards which give free games automatically tendered by the machine, is reversed as being contrary to law.

BRETT P. J., and JONES, J., concur.