## STATE v. STEGALL.

No. A-11659. Jan. 28, 1953.

(253 P. 2d 183.)

282

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and R. E. Havens, County Atty. of Osage County, Pawhuska, for plaintiff in error.

Chas. R. Gray and W. N. Palmer, Pawhuska, for defendant in error.

POWELL, P. J. The defendant in error, who hereinafter will be referred to simply as defendant, was indicted by a grand jury of Osage county for the crime of "serving as Superintendent of School District when not qualified", and the charge was filed in the convening district court of Osage county, but by proper order transferred to the county court of Osage county, the offense charged being determined by the convening court not to be within its jurisdiction.

The defendant entered a plea of not guilty and counsel interposed a demurrer to the indictment. Subsequently the court permitted a withdrawal of the "not guilty" plea and permitted the filing of a motion to quash, based on incompleteness or absence of the constitutional number of signatures of taxpaying citizens to the petition calling the grand jury, etc., as required by Art. II, § 18 of the Constitution of Oklahoma. Evidence was offered by the defendant to support his motion. The motion was by the court considered filed when first entered verbally, and the demurrer was considered as refiled. The matters set out in the motion had improperly been included in the demurrer from the beginning. The written motion was actually filed July 31, 1951, the day of the hearing, and the court at the time requested briefs from both the state and the defendant, and continued the case until September 10, 1951, at which time the court overruled the motion to quash, but at the same time sustained the demurrer of defendant, and both sides gave notice of appeal to this court. Only the state actually perfected an appeal.

The defendant filed herein his motion for the dismissal of the appeal of the state on account of various discrepancies on the part of the prosecution in per-

fection of appeal by case-made, but the motion was overruled in that at all events the record, together with the petition in error, were filed in this court within the statutory time, and could, therefore, be considered as an appeal by transcript. This was in accordance with the uniform holding of this court.

The indictment returned as to the material and charging part reads:

" * * * the jurors of the Grand jury of said County and State * * * do present and find that in said County of Osage in said State of Oklahoma, on the 1st day of October, 1950 to and including the 1st day of May, 1951, the said defendant, R. L. Stegal, then and there being, did then and there wrongfully, wilfully and unlawfully serve, act and agree to serve and act as Superintendent of School District No. 20 of Osage County, Oklahoma, during which period of time the said L. R. Stegal did not hold a valid certificate of qualification issued in accordance with the rules and regulations of the Oklahoma State Board of Education to perform the services of a school superintendent, contrary to the form of the statutes in such case made and provided, against the peace and dignity of the State of Oklahoma."

From our analysis of the overall contentions of the appellant, being the state, and of the defendant, the answer to the first question presented by the demurrer will decide the within case once and for all, and render unnecessary the treatment of the additional points raised. It is by the defendant stated:

"That the allegations of said indictment do not state facts sufficient to charge a misdemeanor against this defendant."

The indictment, the charging part of which we have quoted above, was based on that portion of the "School Code", Tit. 70 O.S. 1951 § 6-7, reading:

"It shall be unlawful for any person to serve, or to contract or agree to serve, as superintendent, principal, supervisor, librarian, school nurse, classroom teacher or other instructional, supervisory or administrative employee of a school district unless such person holds a valid certificate of qualification issued in accordance with the rules and regulations of the State Board of Education to perform the services he performs or contracts or agrees to perform."

It will be noted that the defendant is not accused of receiving funds, so that to hold the indictment valid it will be necessary to determine that the contracting or serving as superintendent, standing alone, constituted a crime.

The state sets out an argument in brief, in the nature of an admission, where it is stated: "It will be noted that the above cited statute does not specify that the acts therein set forth constitute a 'misdemeanor', nor does it specify a 'penalty' for its violation, but it does say that the named act or acts are 'unlawful'." The case for the state is bottomed, then, on the contention that by the use of the word "unlawful", it was the intention of the Legislature to make the violation of section 6(7), above, not only unlawful, but a crime,—a misdemeanor. The effect of the argument is that such must necessarily and impliedly be read into the provision of the statute when considered in connection with the other provisions of the act, or of other acts.

From an examination of the School Code, Title 70 O.S. 1951, are we justified in reading into Section 6-7, a phrase making the violation of the terms of the section quoted a crime, and if so, should the crime be a misdemeanor or should it be a felony?

To determine that the violation of the section of the statute in question, § 6-7, constitutes a crime, would be in face of the absence of words so saying. Moreover, it would be to overlook the fact that the school code discloses that there are a number of sections of Title 70 that provide that the violation of the particular section shall be "unlawful and a misdemeanor", while other sections

simply provide that a violation shall be "unlawful". We are impressed with the argument of counsel for defendant to the effect that if it had been the intent of the Legislature to make the violation of a specific section criminal as well as unlawful it would have been an easy matter to have so said, and by reason of the number of sections merely making the violation of the particular provision unlawful that the omission to make such violation also a crime was not a mere oversight, but on the contrary creates a presumption that it was intentional.

For example:

Section 6-9 of Title 70 provides that it shall be unlawful for any officer or employee of the State Board of Education to solicit or receive money for doing certain things, and declares the doing thereof "to be a misdemeanor."

Section 6-10 of the Title provides that "It is hereby declared to be unlawful and a misdemeanor" to tender, pay or offer money.

Section 6-11 provides that "It shall be unlawful and a misdemeanor" to accept pay from teachers seeking employment.

Section 6-12 provides "It shall be unlawful and a misdemeanor" to offer to pay money to secure employment as a teacher.

Section 6-13 rovides that "It shall be unlawful and a misdemeanor" to ask or receive pay for employing some one as a teacher.

Section 6-16 provides "It shall be unlawful and a misdemeanor" for a teacher to reveal information concerning a child obtained from the child when acting in the capacity as a teacher.

But, on the other hand, Section 6-8 provides that it shall be "unlawful" for the county superintendent of schools, under named conditions, to approve contracts, etc. This provision has the effect, of course, of making any contract with a teacher and others named, not possessing proper certificate from the State Board of Education, void, even though approved by the County Superintendent. No attempt was made to make the act of the superintendent in approving such contract a crime.

Counsel for defendant argues:

"All crimes are 'unlawful' but not all 'unlawful acts' are crimes. Therefore when the county attorney charges a crime in an information and says it was unlawful, he means it was criminal, but when he defends the sheriff in a habeas corpus action for unlawfully holding a prisoner, he knows the sheriff is not committing a crime for so 'unlawfully' holding the prisoner. He knows that, if the sheriff is unlawfully holding a prisoner, the sheriff is not subject to a criminal prosecution. He might under some circumstances be civilly liable for having done so but not criminally. * * * It is contrary to law for a bank to charge more than ten per cent interest, but it is not criminal. It is unlawful for a man to make a will and not leave his wife one-third or one-half [as facts might require] of his property, but it is not criminal for him to do so."

We think this argument sound.

Section 4-30 of the Title specifically creates a civil liability against the members of the Board of Education who vote for the illegal expenditure of funds, including the payment of persons employed as executives or teachers who do not have proper certificates from the State Board of Education, and then the section provides that any person receiving such illegal payment shall be guilty of a misdemeanor. By such language it is made to appear that it is receiving of the funds and not the doing of the work that constitutes the crime.

The gist of the argument of the state appears to be, however, that a proviso merely designating an act "unlawful" would amount to only a futile gesture and a waste of effort if it was not meant that the violation of such act was also criminal. This position leaves out of consideration that to violate the "unlawful" provisions heretofore referred to by the various individuals designated would make them and their bondsmen subject to civil suit. Then such statutory provisions might, under proper circumstances, form the basis for the granting of an injunction. Moreover, an examination of the various provisions of the School Code, Title 70, indicates that ample means and procedure is afforded to carry out the purpose of the act in regard to the prevention of employment of teachers not qualified under the higher educational standards for teachers provided by the Code. The school board and boards of education are under supervision of the State Board of Education and it is inconceivable that a violation of the rules of the State Board or of the statutory provisions could take place where the public officials in question were alert and giving attention to the tasks and duties of the office they had taken oath to perform and carry out. Failing, it would seem that the school code, Section 4-30, makes ample provision for recovery of any funds unlawfully paid out. And, as heretofore indicated, further makes criminal the act of receiving funds for teaching where the teacher has not been determined to be qualified as provided by Section 6-7.

Clearly, the Legislature was taking care of the problem by making the receiving of funds for teaching criminal (a misdemeanor) where the teacher did not have a proper certificate from the State Board of Education. The adoption by this court of the proposition that the act of entering into a contract to so teach or teaching also constitutes a crime, by the reading of such conclusion into the statute, would be in effect providing for a double prosecution for what would practically amount to the same crime; that is, contracting to teach, though one might not go through with the contract or it might be cancelled as void, or to teach, would subject one to prosecution, and then in another action the same person, if he actually taught and received pay, might be again prosecuted. Our thought is that the Legislature did not intend any such result.

In reaching the conclusion indicated, we have kept in mind the oft-repeated principle adhered to by this court, that in Oklahoma there are no common-law crimes, and that no act is a crime unless made so by statute. Tit. 21 O.S. 1951 § 2; Stewart v. State, 4 Okla. Cr. 564, 109 P. 243, 32 L.R.A., N.S., 505; Sneed v. State, 61 Okla. Cr. 96, 65 P. 2d 1245.

In the case of Delano v. State, 82 Okla. Cr. 258, 168 P. 2d 659, in paragraph 4 of the syllabus, this court said, through Jones J., speaking for the court:

"A rule of strict construction is to be applied to criminal statutes and courts should not extend them to embrace acts or conduct not clearly included within the prohibition of the statute."

The above seems to be the general rule in the United States, including the Supreme Court of the United States. 50 Am. Jur. p. 430, § 407. See, also, State ex rel. Mitchell v. City of Shawnee, 167 Okla. 582, 31 P. 2d 552, 92 A.L.R. 948; Pfalzgraf v. Ward, 186 Okla. 437, 98 P. 2d 931.

The phrase "strict construction" is not used as synonymous with "technical construction", but is used in a broader sense; that is, that penal laws are to be interpreted strictly against the state and liberally in favor of the accused; that words not found in the text of the statute will not be read in for the purpose of extending it or giving it an interpretation in conformity with a supposed policy. 50 Am. Jur. p. 407; p. 430. See also State v. Weindel, 52 Okla. Cr. 25, 2 P. 2d 599; McDonald v. State, 54 Okla. Cr. 122, 15 P. 2d 149; Little v. State, 55 Okla. Cr. 420, 32 P. 2d 94; Biggs v. Watt, 56 Okla. Cr. 306, 38 P. 2d 587.

We have been impressed by the principle that a statute should be given a construction according to fair import of its words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision, or as has been stated in a number of cases from this court:

"A primary rule of construction is that the intention of the Legislature is to be found in the ordinary meaning of the words of a statute * * * construed in view of the connection in which they are used, and of the evils to be remedied." Couch v. State, 71 Okla. Cr. 223, 110 P. 2d 613, 616; State v. Sandfer, 93 Okla. Cr. 228, 226 P. 2d 438; and Shimonek v. Tillman, 150 Okla. 177, 1 P. 2d 154.

Not only do the facts here compel well-founded doubt that the Legislature intended to make the violation of section 6-7 criminal, but certainly the act prohibited is not malum in se. That is, the act of teaching without a college degree or certificate is not inherently criminal. It was not until recent years that teachers were required to have college degrees, or possess particular certificates. Some of our finest educators and some of our most noted scientists in years past did not have college degrees. Of course, they constantly worked and studied and developed the intellect. But changing times and progress and the wisdom of our educators, of citizens generally, and of our legislative representatives, brought about the enactment of the School Code. It has been enacted and officials have the solemn duty to see that it is enforced.

The conclusions that we have reached are fortified, additionally by our determination that "unlawful" does not necessarily mean contrary to law. "Un" is a preposition used indiscriminately, and may mean simply not, and "unlawful" means not authorized by law. State v. Savant, 115 La. 226, 38 So. 974, 975; MacDaniel v. United States, 4 Cir., 87 Fed. 324, 30 C.C.A. 670.

See 43 Words and Phrases p. 280 citing State v. Frazier, 54 Kan. 719, 39 P. 819, 821, wherein it is stated:

" 'Unlawful' is defined by Webster as 'not lawful; not legal; not permitted by law.' Every act must be either lawful or unlawful."

In the case of Jones v. Cary, Ind. App., 31 N.E. 2d 74, 78, it is stated:

"The word 'unlawful' does not denote a crime in every instance but simply implies 'that the act is * * * not done as the law allows or requires.' "

And it is held flatly in People v. Stanford, Cal. App., 100 P. 2d 796, 800, that "unlawful" is not synonymous with "criminal". With this statement we agree. To hold "unlawful" to be synonymous with "criminal" as used in Sec. 6-7, Tit. 70 O S. 1951, would be pure legislation. And it is our thought that as indicated by Section 2 of Tit. 21 O.S. 1951, the determination or definition of acts which are punishable as crimes is a purely legislative function which cannot be delegated to, or exercised by the courts.

Although the School Code, Title 70, was enacted in 1949, and nowhere does it refer to the general provisions of any other Title being made applicable to the School Code, such fact is due consideration in determining the intention of the Legislature. Nevertheless, it is argued that certain provisions of the criminal code, Sections 10 and 21 of Title 21 O.S. 1951, adopted from Dakota Territory and enacted in this State prior to 1910, should be construed in connection with Section 6-7, supra, so as to make the violation of that section a crime and a misdemeanor.

Section 10 provides:

"Except in cases where a different punishment is prescribed by this chapter or by some existing provision of law, *every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding one year or by*

a fine not exceeding five hundred dollars, or both such fine and imprisonment." (Italics supplied.)

Section 21 provides: "Where the performance of an act is prohibited by any statute, and no penalty for the violation of such statute is imposed in any statute, the doing of such act is a misdemeanor."

Section 6-7, as heretofore pointed out, does not make the violation of such section a crime or a misdemeanor and obviously Section 10, above, has no application. And by the context and wording of Section 21, above, it is apparent the "prohibited" act referred to is a criminal act, and we have already determined that the "unlawful" act set out in Section 6-7 of Title 70, O.S. 1951 does not mean a "criminal" act, as "unlawful" and "criminal" are not synonymous, and nothing in the section indicates a legislative intent to make a violation of the section criminal.

For the reasons stated, the action of the county court of Osage county in sustaining the demurrer of the defendant to the crime sought to be charged in the indictment is in all things approved and sustained.

JONES and BRETT, JJ., concur.