Bryan M. KINNEY, Vernie C. Wilson, Phyllis Sue Griffin, and Melanee L. Knudsen, Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF TULSA COUNTY, Oklahoma, Appellee.

No. 84566.

Court of Appeals of Oklahoma, Division No. 3.

March 21, 1995.

John B. Nicks, Tulsa, for appellants.

Dick Blakely, Tulsa, for appellee.

## OPINION

HUNTER, Judge:

Appellants, Bryan M. Kinney, Vernie C. Wilson, Phyllis Sue Griffin and Melanee L. Knudsen, seeks review of the trial court's order which denied their motion for summary judgment but granted the summary judgment motion of Appellee, Board of County Commissioners of Tulsa County, Oklahoma (the Board). Appellants brought this declaratory judgment action under 12 O.S. 1991, § 1651, seeking a declaration that the County Home Rule Charter Act (the Act), 19 O.S.Supp.1994, §§ 8.1–8.5 is unconstitutional under Article 5, §§ 46 and 59 of the Oklahoma Constitution. Appellants further alleged the Act denied equal protection of the law under the Oklahoma Constitution and sought injunctive relief.[1] Both parties admit there are no material facts in controversy for purposes of summary judgment.[2] The trial court determined that the Act was not a "special law" and that § 46 of Article 5 of the Oklahoma Constitution *does* apply to the Act. The trial court denied Appellants all relief.

Article 5, § 46 (Okla. Const.) provides in part:

The Legislature *shall not,* except as otherwise provided in this Constitution, pass any local or special law authorizing:

\* \* \* \* \* \*

*Regulating the affairs of counties,* cities, towns, wards, or school districts;

\* \* \* \* \* \*

(Emphasis added).

Article 5, § 59 (Okla. Const.) provides in part:

Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted.

Section 59 generally allows the Legislature to pass special laws when a general law is not applicable. *Reynolds v. Porter,* 760 P.2d 816 (Okla.1988). Under § 59, a three-pronged

inquiry is necessary to determine whether a statute is constitutional. *Reynolds,* at 822; *Ross v. Peters,* 846 P.2d 1107 (Okla.1993). However, under § 46, a review of a statute's constitutionality stops with a determination of whether the statute is general or special. "If the statute is special, § 46 absolutely and unequivocally prohibits its passage by the legislature." *Reynolds,* at 823. For the subjects enumerated in § 46, a general law must always apply. The first question, then, is whether the County Home Rule Charter Act falls within the enumerated subjects provided in Article 5, § 46 of the Oklahoma Constitution. The trial court found that it did. If the trial court correctly determined that it does, we must determine whether it is a special, as opposed to a general, law.

■ Section 8.1 of Title 19 provides the short title of the Act. Section 8.2 contains the language about which Appellants complain. It provides:

Any county in this state with a population of less than five hundred fifty thousand (550,000), according to the latest Federal Decennial Census, which contains a metropolitan area with a population of two hundred fifty thousand (250,000) or more, according to the latest Federal Decennial Census, may adopt or amend a County Home Rule Charter for county government which specifies those powers appropriate for said government and which are not inconsistent with the Oklahoma Constitution and laws of this state.

Section 8.3 provides that for counties which qualify under Section 8.2, and upon the resolution by a majority of the members of the board of county commissioners of the county or upon a petition signed by 10% of the county's voters, members of a charter commission shall be designated. After the members are designated, the issue of whether such members shall be authorized to frame a charter for the county shall be submitted to the voters of the county in the next general election. If the voters approve the question, the commission shall propose a county char-

---

1. Appellants did not include in their summary judgment brief their allegations concerning a denial of equal protection.

2. The trial court considered an amicus curiae brief in opposition to Appellants' motion for summary judgment filed by James C. Thomas, Tulsa, Oklahoma.

ter, which must be submitted to the county voters at the next regular countywide election or upon a special election. Section 8.4 sets forth the provisions of the charter. Section 8.4 provides in part:

A. A charter shall set forth the structure of the county government and the manner in which it is to function. The charter may provide for a governing body, which may be other than as presently constituted, which shall be elective, and service shall be upon the qualifications, terms, plan of representation and conditions of tenure and compensation as may be fixed by the charter. The term for service of the governing body shall not exceed four (4) years. In addition to the powers and duties provided by the charter, the governing body shall exercise all powers, and discharge all duties which, in the absence of the provisions of said charter, would devolve by law to the board of county commissioners or any other county governmental board, agency, commission or council. Said charter may provide for the organization, reorganization, establishment and administration of the government of the county, including the control and regulations of the performance of and the compensation for all duties required in the conduct of county affairs. The charter may authorize the governing body to create or consolidate any county office, department or agency, define the duties thereof, fix the compensation for service therein, make the same elective or appointive, and prescribe the time, qualifications and conditions of tenure in any such county office, department or agency.

  \*  \*  \*  \*  \*  \*

A review of just Subsection A of 19 O.S. 1994 Supp. § 8.4 clearly shows this legislative act "regulates the affairs of counties" as stated in Article 5, § 46 of the Oklahoma Constitution. The Act permits voters in the qualifying counties to effectively replace the entire system of county government. Accordingly, if the County Home Rule Charter Act is a special law, it is unconstitutional under Art. 5, § 46.

■ Legislative acts are presumed constitutional and will be upheld unless clearly, palpably and plainly inconsistent with the Constitution. *Kimery v. Public Service Company of Oklahoma,* 622 P.2d 1066 (Okla. 1980); *Maule v. Independent School District No. 9 of Tulsa County,* 714 P.2d 198 (Okla. 1985). In considering whether a statute is general or special (i.e. "local"), the Supreme Court of Oklahoma stated in *Tulsa Exposition and Fair Corporation v. Board of County Commissioners of County of Tulsa,* 468 P.2d 501 (Okla.1970):

"In order for a law to be general in its nature and to have uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted. But, where a statute operates upon a class, the classification must not be capricious or arbitrary and must be reasonable and pertain to some peculiarity in the subject matter calling for the legislation. As between the persons and places included within the operation of the law and those omitted, there must be some distinctive characteristic upon which a different treatment may be reasonably founded and that furnished a practical and real basis for discrimination."

*Tulsa Exposition,* at 505, quoting *Haas v. Holloman,* 327 P.2d 655 (Okla.1958). See also *Black v. Ball Janitorial Service, Inc.,* 730 P.2d 510, 514 (Okla.1986); *Hamilton v. Oklahoma City,* 527 P.2d 14, 15 (Okla.1974).

■ The Supreme Court has long recognized that heavily-populated counties may have problems much different than less populated counties. *Hamilton,* at 16; *Tulsa Exposition,* at 507. However, there is no universal rule that Oklahoma City and Tulsa, being the largest cities in our state, must be placed in a different class from other cities in the state. *Hamilton,* at 16. The test for determining whether population is a reasonable basis for classification is:

The Legislature may classify the counties and cities of the state on the basis of population for legislative purposes when the classification is not arbitrary and capri-

cious, but is founded upon real and substantial distinctions and the questions of population bears some reasonable, rational relation to the subject-matter.

*Hamilton,* at 16.

There must be some distinctive characteristic warranting a different treatment between persons and places included within the class upon which the law operates and upon those excluded from the class. *Hamilton,* at 16; *Nesbitt v. District Court of Mayes County,* 440 P.2d 700, 704 (Okla.1967).[3] The most important factor in determining whether a law is special or general is the basis of the classification contained in it. *Nesbitt,* at 705. The mere fact that the classification is open-ended, that is, could arguably include other counties reaching the population mark because it allows for future censuses, is not decisive of whether the legislation is general in nature. *Hamilton,* at 16; *Roberts v. Ledgerwood,* 134 Okla. 152, 272 P. 448 (1928).

The classification in the Act includes counties with a population of less than 550,000, according to the latest federal decennial census, which contains a metropolitan area with a population of 250,000 or more, according to the latest federal decennial census. The "1993 statistical abstract" attached to the amicus curiae brief indicates the only county in the state which exceeds the 550,000 population cap of the statute is Oklahoma County. All other counties in the state are below that. With regard to counties containing a metropolitan area of 250,000 or more in such counties, the only county presently qualifying is Tulsa County, Oklahoma. Thus, at the time of this action and according to the parties when the statute was enacted, only Tulsa County qualifies to proceed under the County Home Rule Charter Act.

Are there some "real and substantial distinctions" upon which the population classifications of counties in this Act may be founded? Appellee (and Amicus) maintains the population classifications in the Act are due to the differences between highly populated counties and more rural counties in terms of social and economic stresses including crime, congested court dockets, greater burdens of roads and highways, taxation and property issues, unemployment, etc. Appellee opines that these distinctions are "rationally related to the subject of home rule government". Amicus, however, admits it is "impossible to justify the exclusion" of Oklahoma County from the Act in view of the absence of any known legitimate legislative purpose. Amicus then directs our attention to the various forms the Act took while passing the Legislature and states the exclusion of Oklahoma County from the Act came about because of political pressure from a certain Oklahoma County officer. Attached to the amicus brief is an affidavit from the original author of the Act regarding what this author maintains was the intent of the Act. The intent of one member of the Legislature is not competent evidence of what the Legislature intended by an Act since the Legislature speaks solely as a body through its concerted action. *Haynes v. Caporal,* 571 P.2d 430 (Okla.1977); *State v. Sandfer,* 93 Okla.Crim. 228, 226 P.2d 438 (1951). Furthermore, we only look at Legislative history of an act if construction of the act is necessary. *Couch v. International Brotherhood of Teamsters, Etc.,* 302 P.2d 117 (Okla.1956). Our inquiry is limited to and cannot extend beyond, that of measuring the basis of classification actually embodied in the Act itself by the permissible standards of our fundamental law. *Nesbitt,* 440 P.2d at 706.

The parties have shown no, and we can glean no, "real and substantial distinction" upon which the classification in the Act which excludes counties with populations *over* 550,-000 from counties with populations *under* 550,000, is based. Although there may exist a real and substantial distinction for allowing county home rule in counties containing metropolitan areas in excess of 250,000, due to the factors noted by Appellee, we can find no, and Appellees have offered no, rational basis for the 550,000 population cap which operates to exclude Oklahoma County from the option of county home rule. As indicated by the supplied statistics, both of the counties with the highest population in this state, Tulsa County and Oklahoma County, face similar problems relating to crime, employ-

---

**3.** *Nesbitt* was overruled in part on other grounds in *Palmer v. Belford,* 527 P.2d 589 (Okla.1974).

ment, industry, etc. In the trial court's order issued before its journal entry, the trial court determined the distinction between Tulsa and Oklahoma counties is founded in reason because the City of Tulsa is contained within two counties while Oklahoma City extends into five counties and that "confusion" might result if only Oklahoma County changed to home rule and not the other contiguous counties. First, we can find nothing in the record to support this speculative rationale for the classification. Further, since the City of Tulsa does extend to two counties, the same "confusion" could result as that portended for Oklahoma City.

The classification scheme in 19 O.S.Supp.1994, § 8.2, which distinguishes between counties having a city of over 250,000 and a population of *less than 550,000* and those having a city of over 250,000 and a population *550,000 and over*, is arbitrary and capricious and unconstitutional as a special law prohibited by Article 5, Section 46 of the Oklahoma Constitution. This is the type of special legislation regarding the affairs of counties that this constitutional provision was designed to protect against. Although severability of an unconstitutional provision of an Act is appropriate in certain cases,[4] such remedy is not appropriate if it creates a result not intended or contemplated by the Legislature. *Tulsa Exposition*, 468 P.2d at

507; *Ethics Commission of State of Oklahoma v. Cullison*, 850 P.2d 1069 (Okla.1993).[5] The question is whether the Legislature would have passed the remaining parts of the Act if they had known the population bracket was void. By judicially severing that portion of Section 8.2 which provides a population cap of counties with less than 550,000 residents, Oklahoma County would be eligible to proceed under the new Act. We cannot say this is a result intended by the Legislature and that the Legislature would have enacted the Act without such cap. We decline to excise only a portion of Section 8.2: the whole Act must fail.

Having determined § 8.2 is a special law, we need not address Appellants' contention the Act, if found to be "general", is an unconstitutional delegation of power under Article 17, § 2, Okla. Const.

The judgment of the trial court is REVERSED.

GARRETT, C.J., and ADAMS, J., concur.

---

**4.** *Maule v. Independent School District No. 9 of Tulsa County,* 714 P.2d 198 (Okla.1985).

**5.** Under 75 O.S.1991, § 11a, for acts enacted after July 1, 1989, the provisions in such acts are presumed severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:
   1. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or
   2. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.