2002 OK CIV APP 57

**PEOPLE'S ELECTRIC COOPERATIVE, INC., Plaintiff/Appellant,**

v.

**STATE OF OKLAHOMA, ex rel. OKLAHOMA CORPORATION COMMISSION, Defendant/Appellee.**

No. 95,719.

Court of Civil Appeals of Oklahoma, Division No. 4.

Jan. 2, 2002.

Patrick D. Shore, Derryberry, Quigley, Solomon & Naifeh, Oklahoma City, OK, for Plaintiff/Appellant.

William R. Burkett, General Counsel, Oklahoma Corporation Commission, Oklahoma City, OK, for Defendant/Appellee Oklahoma Corporation Commission.

CeCe Coleman, Assistant Attorney General, Oklahoma City, OK, for Defendant/Appellee State of Oklahoma.

KEITH RAPP, Judge.

¶1 People's Electric Cooperative (PEC), the respondent below, appeals the decision of the Oklahoma Corporation Commission (OCC) finding that it had jurisdiction over PEC for purposes of regulating terms and conditions of service even though PEC's membership had elected not to be regulated by the OCC.

## BACKGROUND

¶2 The parties to this appeal have no material dispute as to the facts. The matter began when a PEC customer complained to the OCC's Consumer Services Division and requested assistance regarding a problem with an electric bill. PEC declined to cooperate with the OCC relative to the complaint on the ground that OCC no longer regulated PEC.

¶3 OCC instituted a contempt action against PEC alleging that PEC was in violation of Article IX, section 18 of the Oklahoma Constitution and 17 O.S.1991, § 1, both of which define the general and specific authority of the OCC. OCC further alleged that PEC violated OCC Rules 165:35–1–4(A) and (B) and 165:35–21–40 by failing to maintain records and to cooperate with OCC in the investigation of a consumer complaint.[1]

¶4 The issue before the OCC, and here, involves the interpretation of 17 O.S.1991, § 158.27. PEC maintains that the OCC has no authority over it regarding consumer pro-

1. The Rules provide:
**165:35–1–4. Location and retention of records**
(a) **Record retention.** Unless otherwise specified herein, all records required by this Chapter shall be preserved by the utility in the form and for a period of time not less than that specified by applicable rules of FERC or the RUS; or in absence thereof, for two (2) years.
(b) **Record location.** All records required by this Chapter shall be made available for review in Oklahoma at the office or offices of the utility and shall be open for examination by the Commission or its representatives; provided that if the general office of the utility is located outside of Oklahoma, the records may be kept at the general office. Each utility shall maintain records in such detail that the cost of property located and business done in the State of Oklahoma, including cost of fuel for generation purposes, can be accurately and readily ascertained, and the utility shall make available any such records for examination by the Commission or its authorized representative. Each utility shall notify the Commission as to the location of the office or offices at which the various classes of records are kept and shall file with the Commission such reports as the Commission may from time to time require.
**165:35–21–40. Mediation**
(a) Whenever there is a dispute between the utility and the consumer as to the following, the matter may be brought by either party to the Commission's Consumer Services Division:
(1) The existence of or seriousness of a life-threatening situation.
(2) The existence of elderly or handicapped status.
(3) The question of financial assistance or guarantee of payment by a federal, state, or local social service agency.
(4) The provisions of a deferred payment agreement.
(5) The terms and conditions of payment of any part of a bill as rendered.
(6) The proper interpretation of this Section.
(b) The Commission's Consumer Services Division shall review the matter and issue an informal review decision in writing, setting forth the terms and conditions for continued service, disconnection of service, or deferred payment agreement (DPA). If it is the desire of the consumer, they may be represented by a third party, if the consumer is available for verification. If the dispute can be resolved by telephone with the party seeking review, the review decision need not be in writing unless requested by either party. During any period of time when a disconnection dispute is before the Commission or in mediation, the utility shall suspend disconnection procedures.
(c) If the Commission's Consumer Services Division is unable to resolve the dispute to the mutual satisfaction of the parties, either party may file a Complaint with the Commission for final determination.
(d) Whenever the consumer informs the utility that the consumer disputes a charge for service, the utility shall investigate the dispute promptly and thoroughly, and make a diligent effort to reach a mutually satisfactory settlement. If the consumer is dissatisfied with the decision of the utility, the consumer may report the dispute to the Commission's Consumer Services Division. Upon written complaint by the consumer to the Commission, disconnection of service shall be held in abeyance provided the consumer pays the portion of the bill which is not in dispute.

tection and terms and conditions of service because of the election. OCC asserts that the sole result of the election by PEC members was to remove the OCC's regulatory authority over the rates and charges imposed by PEC. The parties do not dispute that the PEC membership duly voted under the provisions of 17 O.S.1991, § 158.27, to opt out of OCC regulation. Thus, the threshold question was whether OCC had jurisdiction to consider the consumer complaint and take action under its Rules.

¶ 5 At the hearing before the Administrative Law Judge (ALJ), the parties agreed to submit the issue of OCC jurisdiction for consideration. The ALJ ruled in favor of PEC and the matter was appealed to the full Commission.

¶ 6 The Commission, by a 2–1 vote, reversed the ALJ's holding that the OCC did not have jurisdiction. In doing so, the Commission noted that it had been informed that the underlying complaint had been resolved. The Commission then decided to treat the case as a declaratory judgment action. PEC appeals.

## STANDARD OF REVIEW

¶ 7 The parties do not agree upon the standard for review. OCC suggests that the "any substantial evidence" test applies notwithstanding the absence of any disputed fact and that the issue involves construction of a statute and jurisdiction. PEC, in turn, suggests a *de novo* standard because the issue for review presents a question of law.

¶ 8 Although not discussed by either side, it is to be noted that the part of the Oklahoma Administrative Procedures Act governing declaratory judgments, 75 O.S.1991, § 307, also applies to the OCC.[2] The standard of review of declaratory decisions under Section 307 is governed by 75 O.S.1991, § 322, and administrative decisions of this nature will not be disturbed in the absence of constitutional violation or error of law.

2. Section 307 directs that agencies shall provide by rule for filing and disposition of "petitions for declaratory rulings as to the applicablity of any rule or order of the agency." The record here does not disclose whether OCC has promulgated

¶ 9 Moreover, where the facts are not disputed an appeal presents only a question of law. *Baptist Bldg. Corp. v. Barnes*, 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.*, 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328. The appellate court has the plenary, independent and nondeferential authority to reexamine legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1.

¶ 10 Therefore, because the facts are not disputed and the OCC chose to treat the matter in its final stages as a procedure for declaratory judgment, without objection, this review is then one of law, and this Court will employ the *de novo* standard of review.

## ANALYSIS AND REVIEW

¶ 11 PEC maintains that it is completely exempt from OCC regulation pursuant to 17 O.S. Supp.2000, § 158.27 (E), save for the stated exceptions listed therein pertaining to territory, acquisition of customers, and competition between utilities. The OCC's Consumer Division asserts that Section 158.27(E) applies only to rates and charges and that the OCC retains authority in all other areas under 17 O.S. Supp.2000, § 158.27 (A). The majority of the OCC Commissioners found the statute was plain and unambiguous and ruled that the OCC did possess the authority to regulate in areas other than rates and charges.

¶ 12 This Court holds that when the members of an electric cooperative, subject to the provisions of 17 O.S. Supp.2000, § 158.27, duly elect to exempt themselves from OCC regulation, then the scope of such exemption applies only to rates and charges and not to rules affecting the cooperative's

such a rule but neither side raises any issue about the Commission's decision to treat the proceedings before it as a request for declaratory relief.

services and operation. In reaching this conclusion, this Court has examined Section 158.27 as a whole with a view of ascertaining and carrying out the intent of the Legislature.

> The determination of legislative intent controls judicial statutory construction. Legislative intent is determined from the language of the statute in light of its general purpose and object. We presume that the Legislature intends what it expresses in a statute. Except when a contrary intention plainly appears, the words used are given their ordinary and common definitions.

*Oglesby v. Liberty Mut. Ins. Co.*, 1992 OK 61, ¶ 8, 832 P.2d 834, 839–40.

¶ 13 The Corporation Commission finds its origin in Article 9 of the Oklahoma Constitution. As originally drafted, the Constitution empowered the OCC with the authority and duty of "supervising, regulating and controlling" transmission companies "in all matters relating to the performance of their public duties **and** their charges therefor, **and** of correcting abuses and preventing unjust discrimination and extortion by such companies...." The OCC is further charged with the responsibility to promulgate rules and regulations to carry out its duty and authority. Okla. Const. art. 9, § 18. This constitutional charge has never changed.

¶ 14 PEC finds its roots in the Rural Electric Cooperative Act (RECA), although the record does not reflect when PEC was founded. In 1939, the Oklahoma Legislature enacted RECA and provided that cooperatives transacting business under the Act "shall be exempt **in all respects** from the jurisdiction and control of the Corporation Commission of this State." 1939 Okla. Sess. Laws, c. 42, § 27; 18 O.S. Supp.1939, § 437.26.

¶ 15 Section 437.26 was repealed in 1971 when the Legislature enacted the Retail Electric Supplier Certified Territory Act (RECTA).1971 Okla. Sess. Laws, c. 113, § 12. Section 158.27 of Title 17 originated with RECTA. 1971 Okla. Sess. Laws, c. 113, § 7.

The statute gave OCC power in two general areas—rates or charges *and* terms and conditions of service. The statute provided, in part:

> A. Effective January 1, 1973, the Commission shall have general supervision over all associations or cooperative corporations as defined herein with power to fix and establish rates **and** to prescribe rules, requirements and regulations, affecting their services, operation, and the management and conduct of their business. It shall have full visitorial and inquisitorial power to examine such associations or cooperative corporations and keep informed as to their general conditions, their capitalization, rates, plants, equipments, apparatus, and other property owned, leased, controlled or operated, the value of same, the management, conduct, operation, practices, and services; not only with respect to the adequacy, security and accommodation afforded by their service, but also with respect to their compliance with the provisions of this act, and with the Constitution and laws of this state, and with the orders of the Commission....

17 O.S.1971, § 158.27 (A) (emphasis added).

¶ 16 In 1983, the Legislature amended Section 158.27, by inserting a new subdivision B, but the subdivision A, set out above, was not amended in substance.[3] 1998 Okla. Sess. Laws, c. 107, § 2. The new subdivision B provided that certain rate increases are not subject to OCC rate investigation. This same new subdivision also provided and delineated a means to have a rate investigation on petition of members either as to the exempt rate increases or for rates and charges in general.[4]

¶ 17 Then, in 1993, the Legislature again amended Section 158.27, by adding the subsection E.1993 Okla. Sess. Laws, c. 231. Subsection A was not amended in substance, but the words "requirements and regula-

---

3. The phrase "Effective January 1, 1973" was removed, otherwise the wording was unchanged.

4. PEC correctly does not assert that the proviso in the new subsection B reestablishing subsection A authority under certain conditions applies here. The terms of the proviso clearly pertain to instances involving elimination of OCC rate investigations when the rates are limited to 3% of the previous 12 months of revenue.

tions" were deleted so that the first sentence now reads, in part:

> The Commission shall have general supervision over all associations or cooperative corporations as defined herein with power to fix and establish rates **and** to prescribe rules affecting their services, operation, and the management and conduct of their business....

1993 Okla. Sess. Laws, c. 231, § 1 (emphasis added).

¶ 18 Thus, subsection A continued the scheme of the RECTA enacted in 1971 and still gave OCC power in two general areas rates or charges *and* rules governing terms and conditions of service. However, as demonstrated by PEC here, and before the OCC, the wording of the new subsection E in the 1993 version brought into question whether OCC had any authority over *both* areas—the rates and the terms of service—whenever the organization's members elected not to be regulated by OCC.

■ ¶ 19 The principal subject matter of subsection E concerns rates and charges and whether the organization or OCC will fix the rates and charges. Further, it is to be noted that subsection E does not expressly provide that the OCC will also lose authority over terms and conditions of service as a result of the membership election. It is obvious, based on the language of the 1939 RECTA, that the Legislature can, and does, make itself clear whenever its intent is to remove the OCC "in all respects" from involvement in the affairs of the cooperative.[5] 1939 Okla. Sess. Laws 1939, c. 42, § 27; 18 O.S. Supp. 1939, § 437.26.

¶ 20 Moreover, subsection E defines its purpose thusly:

> It is therefore the purpose of this subsection to **determine the necessity of regulation of rates and charges by the Commission** by allowing the members consumers of a rural electric cooperative to exempt themselves from regulation by the Commission except as provided herein.

(Emphasis added.)

¶ 21 PEC points to additional language in subsections E(2), E(4), E(5), and E(7), which refers to exemption from regulation "under this section." The thrust of PEC's argument is that such language enlarges the scope of deregulation by referring to "this section" asserting that "this section" includes all of 17 O.S. Supp.2000, § 158.27. Therefore, according to PEC's argument, the authority to regulate rates *and* terms of service as provided in subsection A are necessarily removed by *sub*section E's broad reference to "this section." This argument is clearly strained and outside the bounds of reasonable statutory construction.

¶ 22 While it may be argued that the Legislature's use of the word *subsection* instead of *section* might have avoided this controversy, it nonetheless does not change the legislative meaning of the statute. Moreover, to sustain PEC's argument, this Court must rely by inference upon the removal of the second prong of authority, regulation of terms of service; this removal must be inferred because the subsection E does not explicitly or clearly state that such authority is removed. This Court cannot make and will not make that inference because the general subject of subsection (E) pertains to rates and charges.

¶ 23 Since statehood, as evidenced in the Constitution, rates and charges are but one aspect of supervision and regulation of public service companies. The language of subsection A, adopted in 1971 when the coopera-

---

**5.** PEC offers letters from individual legislators concerning the legislative intent underlying Subsection E. However, such is neither binding on this Court nor relevant. This Court's inquiry is limited to examining the meaning of the Act by the permissible standards of our fundamental law. *Kinney v. Board of County Commissioners of Tulsa, Ok.,* 1995 OK CIV APP 49, ¶ 9, 894 P.2d 444, 447. The Oklahoma Supreme Court addressed consideration of comments from individual legislators in a matter similar in this respect to the case now under review in *Haynes v. Caporal,* 1977 OK 166, ¶ 10, 571 P.2d 430, 434:

> At trial, legislative intent of § 536 was sought to be established through the testimony of an individual senator and house member at the time of its passage. This court is not bound, and need not consider such evidence. Testimony of individual legislators or others as to happenings in the Legislature is incompetent, since that body speaks solely through its concerted action as shown by its vote.

tives were brought under the umbrella of the OCC, after being totally removed in 1939, remarkably resembles the language of article 9, section 18 of the Constitution. This reinforces this Court's opinion that if the Legislature intended to exempt PEC and similar organizations "**in all respects** from the jurisdiction and control of the Corporation Commission of this State" then the Legislature would have caused the statute to plainly state that purpose.

¶ 24 Here, the stated purpose of subsection E, and its overall tenor, deals with rates and charges. Subsection A deals with terms of service as well as rates and charges. This Court finds that subsection E elections to become deregulated result only in removal of the OCC's rate making authority.

¶ 25 The Oklahoma Corporation Commission's finding is affirmed in all respects.

¶ 26 AFFIRMED.

¶ 27 STUBBLEFIELD, P.J., and TAYLOR, J., concur.